[This decision has been published in *Ohio Official Reports* at 96 Ohio St.3d 240.]

WILES, APPELLANT, *v.* MEDINA AUTO PARTS, APPELLEE.

[Cite as *Wiles v. Medina Auto Parts*, 2002-Ohio-3994.]

*Employer and employee—Ohio does not recognize a cause of action for wrongful discharge in violation of public policy when the cause of action is based solely on a discharge in violation of the federal Family and Medical Leave Act, Section 2601 et seq., Title 29, U.S.Code.*

(No. 2001-1303—Submitted March 27, 2002—Decided August 28, 2002.)

APPEAL from the Court of Appeals for Medina County, No. 3131-M.

———————————

COOK, J.

{¶1} The federal Family and Medical Leave Act ("FMLA" or "Act"), Section 2601 et seq., Title 29, U.S.Code, guarantees up to twelve weeks of unpaid leave during a one-year period for a qualifying employee needing time off to care for a relative.[1] In addition to providing substantive rights, the FMLA provides specific remedies for employees who have been aggrieved by their employer's violation of the Act. This case asks us to recognize, as a matter of Ohio common law, a cause of action for wrongful discharge in violation of public policy based solely on an employer's violation of the FMLA. Because allowing such a claim is unnecessary to vindicate the policy goals of the FMLA, we decline to do so.

I

{¶2} According to his complaint, the appellant, Herb Wiles, began working for Medina Auto Parts in 1993. In April 1999, Wiles requested and received permission to take a two-week leave of absence to care for his father, who had been injured in an automobile accident. At the time he requested the leave of absence, Wiles earned $21.20 per hour as a store manager. When Wiles returned to work after the leave of absence, however, Medina Auto Parts lowered his pay rate to $11

per hour and demoted him from manager to counter person. Medina Auto Parts also transferred Wiles to a different store.

{¶3} In January 2000, Wiles filed a complaint in the Medina County Court of Common Pleas alleging that Medina Auto Parts had constructively discharged him in retaliation for exercising his rights under the FMLA. Despite citing the FMLA in his complaint, Wiles did not seek recovery under the Act's remedial provisions. Rather, Wiles asserted a state common-law cause of action, alleging that the actions of Medina Auto Parts constituted a wrongful discharge in violation of public policy. See, generally, *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981.

{¶4} Medina Auto Parts moved for summary judgment on the basis that Ohio does not recognize a cause of action for wrongful discharge that is based solely on the public policy expressed in the FMLA. The trial court granted the motion and the court of appeals affirmed. The cause is now before this court on the allowance of a discretionary appeal.

II

{¶5} The common-law doctrine of employment at will generally governs employment relationships in Ohio. Under this doctrine, a general or indefinite hiring is terminable at the will of either the employee or the employer; thus, a discharge without cause does not give rise to an action for damages. *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 67, 652 N.E.2d 653; see, also, *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150, paragraph one of the syllabus. In response to perceived abuses of the at-will principle, a number of states created an exception that permitted a discharged employee to assert a tort cause of action for wrongful discharge in violation of a fundamental public policy. See *Tameny v. Atlantic Richfield Co.* (1980), 27 Cal.3d 167, 172, 164 Cal.Rptr. 839, 610 P.2d 1330; *Phung v. Waste Mgt., Inc.* (1986), 23 Ohio St.3d 100, 104, 23 OBR 260, 491 N.E.2d 1114 (Clifford F. Brown, J., dissenting)

(collecting cases). After first declining to do so in *Phung*, this court followed the national trend in *Greeley*, supra, and recognized a cause of action in tort for wrongful discharge in violation of public policy. Specifically, we held that "[p]ublic policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute." *Greeley* at paragraph one of the syllabus. Thus, after *Greeley*, an employee terminated in violation of a statute could maintain a common-law action for damages.

{¶6} In the years following *Greeley*, this court expanded and otherwise refined the scope of the wrongful-discharge tort. We have held that a valid *Greeley* claim is not limited to situations where the discharge violates a statute. Instead, the "clear public policy" sufficient to justify a wrongful-discharge claim "may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law." *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, paragraph three of the syllabus (overruling *Tulloh v. Goodyear Atomic Corp.* [1992], 62 Ohio St.3d 541, 584 N.E.2d 729). In addition to expanding the potential sources of the "clear public policy" for purposes of a *Greeley* claim, *Painter* also suggested defining the tort by using the four elements described by then Villanova Law School professor (now Dean and Professor of Law at Chicago-Kent College of Law) Henry H. Perritt, Jr.:

{¶7} " '1.     That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).

{¶8} " '2.     That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).

**{¶9}** " '3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).

**{¶10}** " '4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).' (Emphasis *sic*.)" *Painter*, 70 Ohio St.3d at 384, 639 N.E.2d 51, fn. 8, quoting H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398-399. See, also, 2 Perritt, Employee Dismissal Law and Practice (4th Ed.1998) 3-4, Section 7.1.

**{¶11}** Less than one year after deciding *Painter*, this court formally adopted Professor Perritt's framework as the four elements of an Ohio common-law claim for wrongful discharge in violation of public policy. *Collins*, 73 Ohio St.3d at 69-70, 652 N.E.2d 653. We further established that the clarity and jeopardy elements were questions of law to be decided by the court while factual issues relating to the causation and overriding justification elements were generally for the trier of fact to resolve. Id. at 70, 652 N.E.2d 653; 2 Perritt at 18, Section 7.9.

**{¶12}** In this case, Wiles bases his *Greeley* claim solely on the public policy expressed in the FMLA. The court of appeals upheld the trial court's grant of summary judgment for Medina Auto Parts on the basis that Ohio recognizes no such claim. Although it found the clarity element of a wrongful-discharge tort satisfied based on the FMLA's substantive provisions, the court of appeals found that the jeopardy element was lacking. We review the court of appeals' resolution of these purely legal issues using a de novo standard of review. See *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.* (1996), 76 Ohio St.3d 521, 523, 668 N.E.2d 889; see, also, *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243 ("We review the grant of summary judgment *de novo*").

**{¶13}** Based on the analytic framework adopted in *Collins*, our first task is to ascertain whether the conduct Wiles alleges to have occurred violated a "clear public policy" of this state. *Collins*, 73 Ohio St.3d at 70, 652 N.E.2d 653. We

agree with the court of appeals that the FMLA manifests a sufficiently clear public policy to satisfy the clarity element of a wrongful-discharge tort claim. Indeed, Congress expressly stated an intent "to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity" and "to entitle employees to take reasonable leave * * * for the care of a child, spouse, or parent who has a serious health condition." Section 2601(b). See, also, *Stekloff v. St. John's Mercy Health Sys.* (C.A.8, 2000), 218 F.3d 858, 861 (observing that "a desire to promote job security and stability in workplace relationships was central to Congress's decision to pass the FMLA"). In furtherance of these legislative objectives, "[t]he FMLA's central provision *guarantees* eligible employees 12 weeks of leave in a 1-year period following certain events: a disabling health problem; a family member's serious illness; or the arrival of a new son or daughter." (Emphasis added.) *Ragsdale v. Wolverine World Wide, Inc.* (2002), 535 U.S. 81, ___, 122 S.Ct. 1155, 1160, 152 L.Ed.2d 167, 175, citing Section 2612(a)(1). The Act reinforces this "central provision" by requiring a covered employer to maintain the employee's group health coverage during the leave, Section 2614(c)(1), and to reinstate the employee to his or her former position or an equivalent when the employee returns from leave, Section 2614(a)(1). Moreover, the Act specifically prohibits a covered employer from interfering with, restraining, or denying the exercise of FMLA rights by an employee. Section 2615(a)(1). Thus, the FMLA prohibits what Wiles alleges Medina Auto Parts to have done here—discharging him for exercising his right to FMLA leave. See *Chaffin v. John H. Carter Co., Inc.* (C.A.5, 1999), 179 F.3d 316, 319; see, also, Section 825.220(c), Title 29, C.F.R. (explaining that the FMLA prohibits an employer from discriminating against employees who have used FMLA leave). In light of the Act's statutory and administrative provisions, we conclude that the FMLA expresses a clear public

policy in favor of a qualified employee being allowed to take medical leave to care for a parent with a serious health problem.

**{¶14}** Having found the clarity element satisfied, we next turn to the jeopardy element to determine whether an employer's dismissal of an employee under the circumstances alleged by Wiles would jeopardize the public policy set forth in the FMLA. In other words, we must assess whether the absence of a cognizable *Greeley* claim based solely on a violation of the FMLA would seriously compromise the Act's statutory objectives by deterring eligible employees from exercising their substantive leave rights. See *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 154, 677 N.E.2d 308; see, also, 2 Perritt at 42-43, Section 7.17. It is here that Wiles's claim fails.

**{¶15}** An analysis of the jeopardy element necessarily involves inquiring into the existence of any alternative means of promoting the particular public policy to be vindicated by a common-law wrongful-discharge claim. Id. at 44, Section 7.17. Where, as here, the sole source of the public policy opposing the discharge is a statute that provides the substantive right *and* remedies for its breach, "the issue of adequacy of remedies" becomes a particularly important component of the jeopardy analysis. See *Collins*, 73 Ohio St.3d at 73, 652 N.E.2d 653. "If the statute that establishes the public policy contains its own remedies, it is less likely that tort liability is necessary to prevent dismissals from interfering with realizing the statutory policy." 2 Perritt at 71, Section 7.26. Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests. See *Ross v. Stouffer Hotel Co. (Hawaii) Ltd., Inc.* (1994), 76 Haw. 454, 464, 879 P.2d 1037; *Erickson v. Marsh & McLennan Co., Inc.* (1990), 117 N.J. 539, 562, 569 A.2d 793; *Kofoid v. Woodard Hotels, Inc.* (1986), 78 Ore.App. 283, 286-287, 716 P.2d 771, citing *Walsh v. Consol. Freightways* (1977), 278 Ore. 347, 563 P.2d 1205. In that situation, the public policy expressed in the statute would not be jeopardized by the

absence of a common-law wrongful-discharge action in tort because an aggrieved employee has an alternate means of vindicating his or her statutory rights and thereby discouraging an employer from engaging in the unlawful conduct.

{¶16} In addition to providing substantive rights for employees and prohibitions applicable to employers, the FMLA also contains a comprehensive remedial scheme designed to compensate an employee for his or her employer's violation of the Act. Significantly, the Act entitles an aggrieved employee to compensatory damages equal to the amount of "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation," plus interest calculated at the prevailing rate. Section 2617(a)(1)(A)(i) and (ii). This provision describes an award of back pay, which is designed to " 'make the claimant whole [and] place him in the same position he would have been in' " but for the FMLA violation. *Rogers v. AC Humko Corp.* (W.D.Tenn.1999), 56 F.Supp.2d 972, 976, quoting *Rasimas v. Michigan Dept. of Mental Health* (C.A.6, 1983), 714 F.2d 614, 626. In a case in which an employer's violation of the FMLA has *not* resulted in a denial of wages, salary, or benefits to the employee (i.e., an adverse employment action other than a discharge), the employee may recover "any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks of wages or salary for the employee." Section 2617(a)(1)(A)(i)(II). The employee may additionally recover a like amount "as liquidated damages," unless the employer proves that it acted "in good faith" and "had reasonable grounds for believing that the act or omission was not a violation of" the FMLA. Section 2617(a)(1)(A)(iii); see, also, *Nero v. Indus. Molding Corp.* (C.A.5, 1999), 167 F.3d 921, 928 (holding that a district court may not reduce or eliminate a liquidated-damages award "unless the employer first sustains its burden of showing that its failure to obey the statute was in good faith"). Further, the FMLA authorizes "such equitable relief as may be appropriate, including employment, reinstatement, and

promotion." Section 2617(a)(1)(B). Proper equitable relief may also include an award of front pay either in lieu of reinstatement or, in some cases, in conjunction with it (i.e., for the period between judgment and reinstatement). See *Cline v. Wal-Mart Stores, Inc.* (C.A.4, 1998), 144 F.3d 294, 307; see, generally, *Pollard v. E.I. du Pont de Nemours & Co.* (2001), 532 U.S. 843, 846, 121 S.Ct. 1946, 150 L.Ed.2d 62. Finally, the FMLA allows a prevailing employee to recover reasonable attorney fees as an item of the "costs of the action." Section 2617(a)(3).

{¶17} When viewed as a whole, the FMLA's remedial scheme provides an employee with a meaningful opportunity to place himself or herself in the same position the employee would have been absent the employer's violation of the FMLA. For example, if Wiles had pursued a cause of action based on the FMLA and prevailed, he could have obtained (1) compensatory damages for the salary he lost following his demotion, (2) liquidated damages in a like amount if Medina Auto Parts could not prove that it acted in good faith, (3) prejudgment interest, (4) reasonable attorney fees, and (5) appropriate equitable relief, including front pay and/or reinstatement to the managerial position he held prior to taking his FMLA leave. This combination of compensatory damages and equitable remedies is sufficiently comprehensive to ensure that the public policy embodied in the FMLA will not be jeopardized by the absence of a tort claim for wrongful discharge in violation of public policy.[2] Indeed, a number of federal courts have cited the adequacy of the statutory remedies as a reason *not* to extend state law and recognize a claim for wrongful discharge based on the public policy of the FMLA. See *Cavin v. Honda of Am. Mfg., Inc.* (S.D.Ohio 2001), 138 F.Supp.2d 987, 997-998, and *Dorricott v. Fairhill Ctr. for Aging* (N.D.Ohio 1998), 2 F.Supp.2d 982, 992, affirmed without published opinion (C.A.6, 1999), 187 F.3d 635 (applying Ohio law)[3]; *Lange v. Showbiz Pizza Time, Inc.* (D.Kan.1998), 12 F.Supp.2d 1150, 1155 (applying Kansas law); *McClain v. Southwest Steel Co.* (N.D.Okla.1996), 940 F.Supp. 295, 298 (applying Oklahoma law); *Hamros v. Bethany Homes &*

*Methodist Hosp.* (N.D.Ill.1995), 894 F.Supp. 1176, 1179 (applying Illinois law). We therefore conclude that Ohio does not recognize a cause of action for wrongful discharge in violation of public policy when the cause of action is based solely on a discharge in violation of the FMLA. An aggrieved employee's proper recourse for an employer's FMLA violation is to bring the cause of action authorized by Congress under Section 2617.

{¶18} In arguing that the jeopardy element is satisfied, Wiles relies heavily on this court's decision in *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 677 N.E.2d 308. In that case, a discharged employee brought a *Greeley* claim alleging that his employer fired him for reporting safety violations. This court allowed the plaintiff to maintain a *Greeley* claim based on the public policy embodied in the Whistleblower Statute, R.C. 4113.52, despite the existence of specific statutory civil remedies. While acknowledging that the jeopardy analysis relating to a *Greeley* claim based on R.C. 4113.52 was "a bit more difficult" because of the remedies already provided in the Whistleblower Statute, the *Kulch* opinion found that these remedies did not foreclose recovery of cumulative remedies by way of a common-law cause of action. Id. at 155, 677 N.E.2d 308. Because *Kulch* deemed the remedies in R.C. 4113.52 "not adequate to fully compensate an aggrieved employee who is discharged, disciplined, or otherwise retaliated against in violation of the statute," recognition of a *Greeley* claim "would serve to encourage the legislative objectives of R.C. 4113.52 and complement the limited remedies available under the Whistleblower Statute." Id.

{¶19} Despite the existence of comprehensive remedies in the FMLA, Wiles contends that *Kulch* directs us to recognize a tort claim for wrongful discharge based on an FMLA violation. He argues that the important policy objectives of the FMLA will be jeopardized absent our recognition of a *Greeley* claim because the Act's statutory remedies do not provide "make whole tort relief." Specifically, Wiles notes that the FMLA does not allow recovery of punitive

damages and compensatory damages for "anxiety and emotional distress." See *Cavin*, supra; *Keene v. Rinaldi* (M.D.N.C.2000), 127 F.Supp.2d 770, 772-773; *Settle v. S.W. Rodgers Co., Inc.* (E.D.Va.1998), 998 F.Supp. 657, 665-666, affirmed without published opinion (C.A.4, 1999), 182 F.3d 909, 1999 WL 486643. Because of these perceived shortcomings in the FMLA remedial scheme, Wiles argues that additional tort remedies are necessary to effectuate fully the intent of Congress. We do not agree.

{¶20} Wiles reads *Kulch* more broadly than is warranted. *Kulch* does not, as Wiles argues, stand for the proposition that statutory remedies are inadequate—therefore warranting a *Greeley* claim—when those remedies provide something less than the full panoply of relief that would be available in a tort cause of action for wrongful discharge. Importantly, the analysis upon which Wiles relies garnered the votes of only three justices. See *Kulch*, 78 Ohio St.3d at 163-164, 677 N.E.2d 308 (Pfeifer, J., concurring in syllabus and judgment only); see, also, *Pytlinski v. Brocar Prod., Inc.* (2002), 94 Ohio St.3d 77, 82, 760 N.E.2d 385 (Cook, J., concurring in judgment only). Thus, *Kulch* is not controlling authority on the question of whether the remedies provided in a statute are sufficiently comprehensive to render unnecessary the recognition of a separate common-law *Greeley* claim based solely on the same statute—much less a *Greeley* claim based on a *federal* statute that was the product of a Congressional balancing of right and remedy that we ought not disturb. See *Chappell v. S. Maryland Hosp., Inc.* (1990), 320 Md. 483, 498, 578 A.2d 766; cf. *Bush v. Lucas* (1983), 462 U.S. 367, 388, 390, 103 S.Ct. 2404, 76 L.Ed.2d 648 (declining to recognize constitutional tort action on behalf of federal civil servant demoted in violation of his First Amendment rights when Congress had already in place an "elaborate remedial system" that was produced "with careful attention to conflicting policy considerations").

{¶21} While the FMLA may not (as the law stands today) allow punitive damages or damages for emotional distress, the absence of those items of recovery

does not render the statutory remedies inadequate. For one thing, the question whether punitive damages are recoverable is irrelevant to any discussion of whether the statutory remedies provide something close to make-whole tort relief. Punitive damages are designed not to compensate the plaintiff but, rather, to punish the defendant and deter future wrongdoing. *Preston v. Murty* (1987), 32 Ohio St.3d 334, 335, 512 N.E.2d 1174. For another thing, the mere absence of recovery for emotional distress is not enough to convince us that the remedies authorized by the FMLA are somehow insufficient to vindicate the policy Congress created in the very same statutory scheme. The remedies that the FMLA provides—most notably the compensatory damages allowed by Section 2617(a)(1)(A)(i) and the liquidated damages to which a prevailing plaintiff is presumptively entitled under Section 2617(a)(1)(A)(iii)—are broad enough in their own right to compensate an aggrieved employee for an employer's violation of the Act. There is accordingly no need to create by judicial fiat further remedies by way of a *Greeley* claim when the FMLA provides reasonably satisfactory ones. Cf. *Provens v. Stark Cty. Bd. of Mental Retardation & Developmental Disabilities* (1992), 64 Ohio St.3d 252, 594 N.E.2d 959 (refusing to recognize private cause of action for public employee discharged in violation of constitutional rights when there exist "other reasonably satisfactory remedies provided by statutory enactment and administrative process").[4]

{¶22} By our holding today, we intend neither to diminish nor to disparage the laudable objectives of the FMLA. Nor should our holding be confused with a statement that the FMLA somehow preempts state law in the area of family and medical leave as a matter of Congressional occupation of the field. Indeed, the FMLA states that "[n]othing in this Act or any amendment made by this Act shall be construed to supersede any provision of any State or local law that provides greater family or medical leave rights than the rights established under this Act or any amendment made by this Act." Section 2651(b).[5] By not recognizing a

*Greeley* claim based solely on an FMLA violation, we are merely deciding that the statutory remedies in the FMLA adequately protect the public policy embedded in the Act, leaving no reason for us to expand the scope of remedies that Congress has provided. See *Collins*, 73 Ohio St.3d at 73, 652 N.E.2d 653 (noting that courts sometimes confuse the adequacy-of-remedies analysis with preemption). Rather than preempting a common-law claim for wrongful discharge as a matter of legislative occupation of the field, statutory remedies provide an effective vehicle for vindicating the statute's policy, obviating recognition of a wrongful discharge claim based on the same statute. See *Masters v. Daniel Internatl. Corp.* (C.A.10, 1990), 917 F.2d 455, 456-457 (finding that federal statute did not preempt retaliatory discharge claim under Kansas law but declining to recognize cause of action because federal Act had adequate remedies); see, also, *Kofoid*, supra, 78 Ore.App. at 286-287, 716 P.2d 771.

{¶23} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., and LUNDBERG STRATTON, J., concur.

PFEIFER, J., concurs in judgment only.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., dissent.

————————

**DOUGLAS, J., dissenting.**

{¶24} The majority holds that there is no independent cause of action for wrongful discharge in Ohio based solely on the public policy embodied in the federal Family and Medical Leave Act. I respectfully dissent from the majority's decision.

{¶25} I would instead hold that an at-will employee who is discharged or disciplined in violation of the public policy embodied in the federal Family and Medical Leave Act may maintain a common-law tort cause of action against the

employer pursuant to *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, and its progeny.

RESNICK and F.E. SWEENEY, JJ., concur in the foregoing dissenting opinion.

_____

Michael Terrence Conway, for appellant.

Andrew S. McIlvaine and Thomas E. Palecek, for appellee.

Gittes & Schulte and Frederick M. Gittes; Louis A. Jacobs; Law Offices of John S. Marshall and Joshua J. Morrow, urging reversal for amici curiae Ohio Employment Lawyers Association, Ohio Academy of Trial Lawyers, Ohio NOW Education & Legal Fund, and 9 to 5, National Association of Working Women.

_____

1. All statutory references will be to Title 29, U.S.Code unless otherwise specified.

2. Both Wiles and amici curiae state that the FMLA does not allow recovery of compensatory damages. This contention is simply wrong. Although Section 2617(a) does not by its terms allow recovery for *all* categories of compensatory damages (viz., emotional distress damages), we cannot characterize the damages it does authorize (i.e., lost salary, benefits, other income, actual monetary losses) as anything other than compensatory damages. See, e.g., *Chandler v. Specialty Tires of Am. (Tennessee), Inc.* (C.A.6, 2002), 283 F.3d 818, 827 (noting that Section 2617[a][1][A][i] and [ii] specify recoverable "compensatory damages"); *Hukill v. Auto Care, Inc.* (C.A.4, 1999), 192 F.3d 437, 441 (describing relief under Section 2617[a][1] as "compensatory damages"). Moreover, the cases cited by the amici as support for the blanket statement that "[t]he FMLA does not provide compensatory damages"—*Montgomery v. Maryland* (C.A.4, 2001), 266 F.3d 334, vacated on other grounds (2002), __ U.S. __, 122 S.Ct. 1958, 152 L.Ed.2d 1019, and *Walker v. United Parcel Serv., Inc.* (C.A.10, 2001), 240 F.3d 1268—do not say that. *Montgomery* held that the FMLA does not allow recovery of emotional distress damages, 266 F.3d at 341; *Walker* held that the FMLA does not allow recovery of nominal damages, 240 F.3d at 1277.

3. Before today, the federal courts in Ohio had reached differing conclusions as to whether Ohio law recognizes a *Greeley* claim based solely on a violation of the FMLA. Compare *Cavin*, supra, 138 F.Supp.2d 987, *Dorricott*, supra, 2 F.Supp.2d 982, *Vargo-Adams v. United States Postal Serv.* (N.D.Ohio 1998), 992 F.Supp. 939, and *Gall v. Quaker City Castings, Inc.* (N.D.Ohio 1995), 874 F.Supp. 161 (not allowing wrongful-discharge claim under Ohio law based on violation of FMLA), with *Arthur v. Armco, Inc.* (S.D.Ohio 2000), 122 F.Supp.2d 876, and *Maxwell v. GTE Wireless Serv. Corp.* (N.D.Ohio 2000), 121 F.Supp.2d 649 (allowing wrongful-discharge claim).

4. Even if the *Kulch* plurality's analysis were controlling, Wiles still may not prevail. The *Kulch* plurality found a cognizable *Greeley* claim only after it concluded that (1) the remedies provided in the Ohio Whistleblower Act were not sufficient to provide complete relief *and* (2) the legislature

did not intend the statutory remedies to be the exclusive means of vindicating the statute's policy. *Kulch*, 78 Ohio St.3d at 157-160, 677 N.E.2d 308. Thus, even if we agreed with Wiles that the FMLA's remedies were insufficient, we would still need to decide whether they were intended to be exclusive; if so, a *Greeley* claim would not lie solely for violation of the statute. See *Cavin*, 138 F.Supp.2d at 991. The federal courts are currently split on the question of whether the FMLA remedies are exclusive and therefore preclude other causes of action predicated upon a violation of the Act. Compare, e.g., *O'Hara v. Mt. Vernon Bd. of Edn.* (S.D.Ohio 1998), 16 F.Supp.2d 868, 893-895 (finding FMLA's remedies exclusive, thereby foreclosing a claim under Section 1983, Title 42, U.S.Code based on FMLA violation), with *Knussman v. Maryland* (D.Md.1998), 16 F.Supp.2d 601, 609-610 (holding that FMLA's remedial scheme does not preclude a claim under Section 1983, Title 42, U.S.Code); see, also, *Cavin*, 138 F.Supp.2d at 997, and *Desrochers v. Hilton Hotels Corp.* (D.Mass.1998), 28 F.Supp.2d 693, 695 (finding that FMLA's exclusive remedies preclude state-law claims based on FMLA).

5. But, see, *Desrochers*, 28 F.Supp.2d at 694, fn.1 (concluding that Section 2651[b] "merely allows states to provide additional substantive leave rights" and "does not suggest Congress intended that states should provide additional remedies for FMLA violations"); accord *Cavin*, 138 F.Supp.2d at 993-994.