Marc SCHMAUCH, Plaintiff,

v.

HONDA OF AMERICA MFG., INC., Defendant.

No. C2–02–751.

United States District Court,
S.D. Ohio,
Eastern Division.

Sept. 16, 2003.

Gary A. Reeve, Reeve & Watts, Worthington, OH, for Marc Schmauch, Plaintiff.

Mary Ellen Fairfield, Robert Neal Webner, Vorys Sater Seymour & Pease—2, Columbus, OH, for Honda of America Manufacturing Inc, Defendant.

## ORDER AND OPINION

MARBLEY, District Judge.

## I. INTRODUCTION

This matter is before the Court on Honda of America Manufacturing, Inc.'s ("Honda" or "Defendant") February 7, 2003, Motion for Judgment on the Pleadings on Plaintiff's Claim of Wrongful Discharge in Violation of Ohio Public Policy pursuant to Federal Rule of Civil Procedure 12(c) with respect to the third count of Marc Schmauch's ("Schmauch" or "Plaintiff") First Amended Complaint.

For the following reasons, Defendant's motion is **GRANTED**.

## II. FACTS

For the purpose of evaluating Honda's Motion for Judgment on the Pleadings, the facts as alleged in Schmauch's First Amended Complaint will be taken as true. Honda employed Schmauch for just under ten years until August 10, 2001. On December 20, 2000, Honda placed Schmauch on an Attendance Improvement Program. In early 2001, Schmauch was diagnosed as suffering from clinical depression and severe hypertension. Also, in early 2001, Schmauch notified his supervisor that he would be taking two consecutive weeks of vacation in August 2001. Following periods in which Schmauch was granted leave to complete military obligations and leave pursuant to the Family Medical Leave Act, Schmauch's participation in Honda's Attendance Improvement Program was extended to August 10, 2001. When Schmauch returned from medical leave on or about June 15, 2001, Schmauch was reinstated in a different work area.

On August 6, 2001, Schmauch began his scheduled two consecutive weeks of personal vacation time. The following day, Schmauch called in to work to find out

whether he could return early from vacation and obtained a number to verify the fact that he had called. On August 10, 2001, Schmauch returned to work before his vacation was scheduled to end. The same day, Honda informed Schmauch that he was being separated from employment for having violated the requirements of the Attendance Improvement Program. Honda cited as violations Schmauch's absences for military service in March and April of 2001 and Schmauch's late call-in on August 7, 2001, a pre-approved vacation day. Schmauch alleges he was laid off because of his absences as a result of military obligations and medical leave.

### III. PROCEDURAL HISTORY

Schmauch filed his Complaint in this court on August 1, 2002. On September 9, 2002, Schmauch filed his First Amended Complaint. Schmauch's First Amended Complaint alleges three counts against Honda, namely, a violation of the Family Medical Leave Act ("FMLA"), a violation of the Uniformed Services Employment and Reemployment Rights Act ("USER-RA"), and a violation of Ohio public policy. On February 7, 2003, Honda moved for judgment on the pleadings with respect to Schmauch's Ohio public policy claim.

### IV. STANDARD OF REVIEW

The standard of review for a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is the same standard used for evaluating a motion to dismiss under Rule 12(b)(6). *Grindstaff v. Green,* 133 F.3d 416, 421 (6th Cir.1998). In considering a Rule 12(c) motion, "the court must accept all the factual allegations of the complaint as true." *Paskvan v. City of Cleveland Civil Serv. Comm'n,* 946 F.2d 1233, 1235 (6th Cir. 1991). The Court must "determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that

would entitle relief." *Grindstaff,* 133 F.3d at 421.

### V. ANALYSIS

Honda argues that Schmauch's Ohio public policy claim must be dismissed as it is duplicative of his USERRA claim. In support of its motion for judgment on the pleadings, Honda states that the USERRA provides its own comprehensive remedy scheme and that Congress intended the remedies set forth in the USERRA to be exclusive.

As a threshold matter, Schmauch asserts that his Ohio public policy claim of wrongful discharge is based not only on Honda's violation of USERRA, but also on Honda's violation of the FMLA. Honda responds by noting that "[P]laintiff amended his Complaint to delete the FMLA as a basis for his 'public policy' claim."

■ When a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward. *Parry v. Mohawk Motors of Mich., Inc.,* 236 F.3d 299, 306–07 (6th Cir.2000) (citing *In re Atlas Van Lines, Inc.,* 209 F.3d 1064, 1067 (8th Cir.2000); *Massey v. Helman,* 196 F.3d 727, 735 (7th Cir.1999)); *see also Fuhrer v. Fuhrer,* 292 F.2d 140, 144 (7th Cir.1961) ("The prior pleading is in effect withdrawn as to all matters not restated in the amended pleading, and becomes functus officio."). Schmauch's First Amended Complaint supercedes the original Complaint. Because Schmauch failed to reassert his claim of wrongful termination in violation of Ohio public policy established by the FMLA when he filed his First Amended Complaint, this Court will only consider his claim for wrongful termination in violation of Ohio public policy established by the USERRA.

 Although employment relationships in Ohio are generally governed by the common-law doctrine of employment at will, Ohio law recognizes "a cause of action in tort for wrongful discharge in violation of public policy." *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 773 N.E.2d 526, 529 (2002) (plurality opinion). The Supreme Court of Ohio has defined this tort with four elements:

1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element)[;]

2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element)[;]

3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element)[; and]

4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

*Collins v. Rizkana*, 73 Ohio St.3d 65, 652 N.E.2d 653, 657–58 (1995); *Wiles*, 773 N.E.2d at 529–30. The clarity and jeopardy elements are questions of law, while the causation and overriding justification elements are questions of fact. *Collins*, 652 N.E.2d at 658; *Wiles*, 773 N.E.2d at 530.

The parties do not dispute that the USERRA manifests a sufficiently clear public policy to satisfy the first element of the wrongful discharge claim. The express purposes of the USERRA are

(1) to encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages ... which can result from such service;

(2) to minimize the disruption to the lives of persons performing service in the uniformed services ... by providing for the prompt reemployment of such persons upon their completion of such service; and

(3) to prohibit discrimination against persons because of their service in the uniformed services.

38 U.S.C. § 4301(a).

In his First Amended Complaint, Schmauch alleges that Honda has violated Ohio public policy established by the USERRA. Honda challenges this public policy claim as a matter of law on the grounds that the jeopardy element of the tort is not satisfied. Specifically, Honda argues that the USERRA provides Schmauch with the remedies necessary to vindicate any violation of public policy. Therefore, Honda contends that Schmauch's public policy claim is duplicative of his statutory claim. The issue presently before this Court turns on the jeopardy element, and because this element is a matter of law, it is an appropriate issue to decide on a motion for judgment on the pleadings.

 Ohio "public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute." *Greeley v. Miami Valley Maint. Contractors, Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981, 986 (1990). However, the jeopardy element of the tort is not met where the statute in question provides its own adequate remedies. In other words, "there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests." *Wiles*, 773 N.E.2d at 531. The court in *Wiles* refused to recognize a wrongful discharge public policy tort based on a violation of the federal FMLA because "allowing such a claim is unnecessary to vindicate the policy goals of the FMLA." *Id.* at 528. The *Wiles* court

found the remedies under the FMLA adequate even though punitive damages and damages for emotional distress are not available under the FMLA. *Id.* at 534.

■ Applying the Supreme Court of Ohio's reasoning in *Wiles,* this Court finds that the USERRA provides adequate remedies such that the public policies established by the USERRA are not jeopardized by denying Schmauch the ability to pursue a tort action for a violation of public policy. Like the FMLA, the USERRA provides that an employer who violates the statute may be liable to the affected employee for compensatory damages, liquidated damages, attorney's fees and costs, as well as equitable relief. *Compare* 29 U.S.C. § 2617 *with* 38 U.S.C. § 4323. The USERRA provides adequate remedies to protect the public policy the USERRA establishes, and none of the Ohio case law Schmauch cites suggests otherwise.

Schmauch argues that his public policy claim is based on the public policies of the USERRA. Therefore, Schmauch contends that the USERRA provides an independent source of public policy that would be jeopardized were he not allowed to bring a public policy tort claim because the USERRA limits the amount of damages a plaintiff can recover. *See* 38 U.S.C. § 4323(d).

Schmauch relies primarily on the Supreme Court of Ohio's decision in *Kulch v. Structural Fibers, Inc.,* 78 Ohio St.3d 134, 677 N.E.2d 308 (1997). In his response to Honda's Motion, Schmauch asserts that the *Kulch* court found that "a cumulative and/or additional remedy can be gained by the bringing of a public policy tort for wrongful discharge based upon violation of a statute so long as the statute utilized does not expressly state that it provides the exclusive remedy for a violation." (Pl.'s Memo. Contra Def.'s Mot. at 7–8). But *Kulch* does not hold that a public policy claim based on the public policy of a statute will always be available when the statute provides remedies for its violation. *See Wiles,* 773 N.E.2d at 534. Rather, the court in *Kulch* specifically considered the Ohio whistleblower statute, finding that the remedies provided by that statute "are not sufficient to provide the complete relief that would otherwise be available in a *Greely*-based cause of action for the tort of wrongful discharge." 677 N.E.2d at 325. The court based this conclusion on the fact that the whistleblower statute does not provide for certain compensatory damages or punitive damages, and the relief provided under the statute "comes nowhere near the complete relief available" in a public policy tort action. *Id.*

Compared to the whistleblower statute considered in *Kulch,* however, the USERRA provides broader remedies. Section 4323(d)(1)(A) provides that "[t]he court may require the employer to comply with the provisions of this chapter." 38 U.S.C. § 4323(d)(1)(A). The USERRA also provides that "the court may use its full equity powers, including temporary or permanent injunctions, temporary restraining orders, and contempt orders, to vindicate fully the rights or benefits of persons under this chapter." 38 U.S.C. § 4323(e). In addition to compensatory damages, the USERRA authorizes liquidated damages. 38 U.S.C. § 4323(d)(1)(B)-(C). Finally, the USERRA provides that "[n]o fees or costs may be charged or taxed against any person claiming rights under this chapter" and "the court may award ... reasonable attorney fees, expert witness fees, and other litigation expenses." 38 U.S.C. § 4323(h). Therefore, the remedies under the USERRA are sufficient to provide the complete relief required by *Kulch.*

Schmauch contends that because the USERRA does not provide for punitive damages, his public policy claim is justified. The USERRA's provision for com-

pensatory damages serves to make the Schmauch whole, and even without punitive damages, the USERRA's provision for liquidated damages operates to punish the defendant. The broader remedies, including liquidated damages, available in the USERRA compared with the remedies available in the statute in *Kulch* provide sufficient grounds for this Court to find that the public policy set forth in the USERRA is not jeopardized by the inability of Schmauch to make a public policy claim against Honda.

Furthermore, the Supreme Court of Ohio's recent decision in *Wiles* supports this Court's view. In *Wiles,* the Supreme Court of Ohio found that the FMLA provided adequate remedies to protect the public policy it established although the act does not provide for punitive damages or compensatory damages for emotional distress. 773 N.E.2d at 533–34. According to the court, a statute may provide adequate remedies even if it does not provide the "full panoply of relief that would be available in a tort cause of action for wrongful discharge." *Id.* at 534. The statutory remedies need only be "broad enough in their own right to compensate an aggrieved employee for an employer's violation" of the relevant statute. *Id.* The remedies provided in the USERRA are aimed precisely at compensating an aggrieved employee as required by *Wiles.* At most, the statutory limits serve to prevent a plaintiff from recovering more than necessary to compensate him for his grievances. Furthermore, although the *Wiles* court found that the statutory remedies need only be "broad enough in their own right to compensate an aggrieved employee for an employer's violation" of the relevant statute, the USERRA authorizes courts to "require the employer to pay the person an amount equal to the [compensatory damages] as liquidated damages" if the employer willfully violated the provisions of the USERRA. *See* 38 U.S.C.

§ 4323(d)(1)(C). Therefore, the remedies provided in the USERRA are no less adequate to protect the public policy of the USERRA than the remedies of the FMLA are to protect the public policy of that statute. The USERRA provides its own adequate remedy, which forecloses the need for a separate public policy tort claim.

Finally, Schmauch's reliance on *English v. General Electric Co.,* 496 U.S. 72, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990), is misplaced. In *English,* the United States Supreme Court said that "the mere existence of a federal regulatory or enforcement scheme ... does not by itself imply preemption of state remedies." *Id.* at 87, 110 S.Ct. 2270 (concluding that federal statutes fully occupy the field of nuclear safety regulation, but that they do not thereby preempt state-law tort claims against nuclear facilities). In that case, the issue was whether Congress intended to preempt the common law. However, the issues of preemption and whether a statute provides adequate remedies to protect public policy are generally not the same. *See Collins,* 652 N.E.2d at 660. In this case, neither party claims that the USERRA preempts the public policy tort claim. Rather, the point is that the USERRA provides its own adequate remedy, which forecloses the need for a separate public policy tort claim.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings and hereby dismisses the third count of Plaintiff's First Amended Complaint.

**IT IS SO ORDERED.**