{¶ 31} Although I agree with the decision ultimately reached by the majority, I do not concur in the majority's opinion. The majority's opinion incorrectly holds that the public policy on which Celeste bases his Greeley claim "is embodied in the whistleblower statute," and, therefore, that Celeste's "failure to comply with the statutory requirements of R.C. 4113.52 is fatal to his Greeley claim."
 {¶ 32} Plaintiff's complaint alleges that he was discharged from his employment with defendant for "express[ing] concerns that the marketing of the proposed modifications to the motorcycle engines contemplated by Defendant without adequate safety testing and adjustments would result in injury and/or death of the people purchasing the modifications." Under Ohio's Product Liability statutes, a manufacturer is strictly liable for manufacturing products where "the foreseeable risks associated with its design" exceed "the benefits associated with that design" and where the manufacturer fails to warn about the risks associated with the product. R.C. 2307.75 and 2307.76.
 {¶ 33} Ohio's product liability statutes prohibit the manufacture of engines that can cause injury and/or death without adequate safety testing. Bowling v. Heil Co. (1987),31 Ohio St.3d 277, 284 ("the consumer of * * * products is entitled to the maximum of protection at the hands of * * * those who market the products") (citation omitted). Therefore, plaintiff has satisfied the "clarity element" in his wrongful discharge claim.Painter v. Graley (1994), 70 Ohio St.3d 377, 384 fn. 8, 1994-Ohio-334 ("[t]hat clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law").
 {¶ 34} The majority concludes that the product liability statutes are not a source of public policy independent of Ohio's whistleblower statute, R.C. 4113.52. The majority reasons that the whistleblower statute, unlike the product liability statutes, specifically prohibits an employer from discharging an employee. Accordingly, "if appellant wished to rely on the public policy embedded in the whistleblower statute to establish his Greeley
claim, appellant had to comply with the requirements of R.C.4113.51 et seq." But cf. Wiles v. Medina Auto Parts,96 Ohio St.3d 240, 2002-Ohio-3994, at ¶ 15 ("there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests").[3]
 {¶ 35} The whistleblower statute protects an employee who reports "a violation of any state or federal statute" which the employee "believes * * * is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public safety or is a felony." R.C. 4113.52(A)(1)(a). By its terms, the whistleblower statute only applies to criminalactivity, i.e. "a criminal offense" or "a felony." Brooks v.Marietta Util. Serv. Inc. (C.A.6, 1998), No. 97-4068, 1998 U.S. App. LEXIS 25824, at *12-*14; Lesko v. Riverside MethodistHosp., 10th Dist. No. 04AP-1130, 2005-Ohio-3142, at ¶¶ 18-27;McGuire v. Elyria United Methodist Village,152 Ohio App.3d 186, 2003-Ohio-1296, at ¶¶ 17-18.
 {¶ 36} Ohio's product liability statutes only impose civilliability for their violation. The public policy embedded in the product liability statutes, therefore, is independent of the whistleblower statute. Cf. Evans v. PHTG, Inc., 11th Dist. No. 2001-T-0054, 2002-Ohio-3381 (where plaintiff claimed she was discharged for reporting the unauthorized practice of medicine/surgery by her employer, a criminal offense under R.C.4731.41).
 {¶ 37} Although appellant has satisfied the clarity element of his Greeley claim, he has failed to raise a genuine issue of material fact regarding the causation element, i.e. the employee's dismissal was motivated by conduct related to the public policy. Reasonable minds could only conclude from appellant's deposition that appellant did not report violations of the statute and that the reasons for his termination were unrelated to his expressed concerns regarding product safety.
 {¶ 38} For the foregoing reasons, I concur in judgment only.
[3] The majority opinion also creates the erroneous impression that Celeste's Greeley claim would be preempted by the availability of a remedy under the whistleblower statute. SeeKulch v. Structural Fibers, Inc., 78 Ohio St.3d 134,1997-Ohio-219, paragraph two of the syllabus ("R.C. 4113.52 does not preempt a common-law cause of action against an employer who discharges or disciplines an employee in violation of that statute"); Celeste v. Wiseco Piston, 151 Ohio App.3d 554,2003-Ohio-703, at ¶ 29 ("Ohio's Product Liability Act * * * may contain a public policy prohibiting employers from terminating an employee who reports * * * concerns about consumer safety").