[Cite as *Lee v. Cardington*, 2013-Ohio-3108.]

COURT OF APPEALS
MORROW COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DONALD LEE | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellant | Hon. Patricia A. Delaney, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 12CA0017 |
| VILLAGE OF CARDINGTON, OHIO | |
| Defendant-Appellee | O P I N I O N |

CHARACTER OF PROCEEDING:         Appeal from the Morrow County Common
                                 Pleas Court, Case No. 2009 CV 00469

JUDGMENT:                        Affirmed in part; Reversed in part;
                                 and Remanded

DATE OF JUDGMENT ENTRY:          July 15, 2013

APPEARANCES:

For Defendant-Appellee           For Plaintiff-Appellant

JOHN D. LATCHNEY                 D. WESLEY NEWHOUSE
Tomino & Latchney, LLC, LPA      MICHAEL S. KOLMAN
803 E. Washington Street, Suite 200   Newhouse, Prophater, Letcher &
Medina, OH 44256                 Moots, LLC
                                 5025 Arlington Centre Blvd., Suite 400
                                 Columbus, OH 43220

*Hoffman, P.J.*

{¶1} Plaintiff-appellant Donald Lee appeals the October 1, 2012 Judgment Entry entered by the Morrow County Court of Common Pleas granting summary judgment in favor of Defendant-appellee the Village of Cardington, Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} Appellant was employed as the Crew Chief for the Village of Cardington Waste Water Treatment Plant (WWTP) from 2000, until his termination in 2009. His duties included supervision and oversight of street maintenance work, sewer maintenance work, and the operation of the water treatment plant and waste water treatment plant. Appellant also served as a Township Trustee for Cardington Township. His duties included supervision of the licensed operator of the waste water treatment plant.

{¶3} Cardington Yutaka Technologies ("CYT") is a manufacturer of car parts, and the Village's largest employer.

{¶4} WWTP uses two waste water pump stations to lift raw sewage from the Village's water supply. Bacteria in the pumps digest the solids in the effluent. Operators sample the effluent and decide how long the material stays in tank one before moving to tank two. Once the effluent is pumped into tank two, the bacterium continues to digest and break down the solids. The effluent is sampled and then pumped into tank three where the bacterium continues to break down the solids. When the process in tank three is completed the effluent is pumped on to clarifiers. In the clarifiers, the heavier particles drop to the bottom of the tank, and the process continues in the digester where a bacterium continues to clean the water of harmful materials.

The clear fluid is removed from the tanks and is recycled through the plant. The dry material is known as sludge and is shoveled out to a storage area.

{¶5} WWTP began to experience a problem with the bacteria used to treat the raw sewage, including frothing and foaming. Testing determined CYT was releasing a toxic substance into the wastewater known as glycol at the time of the plant shutdowns. The toxic substance problem occurred twice a year and coincided with the shut downs of CYT. Testing determined the sludge produced at the WWTP was also contaminated.

{¶6} Appellant had a permit with WWTP and the Ohio EPA to use the sludge produced at the WWTP on his farm as fertilizer. However, due to the release of the glycol chemical into the water by CYT, he would no longer use the sludge. Ultimately the sludge was taken to a landfill.

{¶7} On September 15, 2008, Appellant attended the Village Council meeting to inform the Council of the glycol entering the WTTP pump and other problems. He informed the council the Village had a material coming into the plant killing the bacteria, and as a result, toxic water was potentially being sent down stream. He informed council this was an EPA violation, and the contaminant was causing deterioration in the propellers of the pumps. He informed council the chemical was killing WWTP bacteria necessary in water treatment, and as a result was sending toxic water downstream.

{¶8} Appellant also indicated to council and his superior he did not agree with some aspects of engineering reports and estimates to repair the WWTP. He indicated some of the items were a waste of taxpayer money and could be accomplished more cheaply. He questioned the practicality and expense of the repairs. Appellant further continued to report other violations of law involving CYT to his supervisor, including use

of more than five percent of the total of the Village's water production. He further informed his superior he suspected CYT was using a separate well as a source of fresh water.

{¶9} Prior to his termination, Appellant provided a written supervisor's report to Dan Ralley. The document set forth specific equipment failures and damage occurring as a result of the dying bacteria caused by the glycol in the waste water. Appellant outlined the equipment needing repair and replacement.

{¶10} On April 27, 2009, Appellant was placed on administrative leave and told he had two weeks to resign his employment.

{¶11} Appellant filed the within action on October 16, 2009, after termination from his position at Village WWTP, alleging violations of the Ohio's Whistleblower statute, R.C. 4113.52(A)(1)(a) and 4113.52(A)(2), and wrongful termination in violation of public policy due to complaints of criminal conduct which violated EPA laws. The Village filed an answer on March 3, 2010.

{¶12} The Village filed a motion for summary judgment on June 25, 2012. The trial court granted the motion for summary judgment and dismissed the action on October 1, 2012 holding Appellant was not entitled to whistleblower protection because he did not report any criminal act of an environmental nature. The court dismissed the wrongful termination claim because Appellant did not meet the jeopardy element as the whistleblower statute provides parallel remedies.

{¶13} Appellant now appeals, assigning as error:

{¶14} "I. THE COURT BELOW ERRED BY FINDING THAT PLAINTIFF DID NOT STATE A WHISTLEBLOWER CLAIM PURSUANT TO ORC 4113.52(A)(1)(a)

BECAUSE PLAINTIFF DID NOT COMPLAIN ABOUT WHAT HE BELIEVED IN GOOD FAITH TO BE A CRIMINAL ACT.

{¶15} "II. THE COURT BELOW ERRED BY IGNORING PLAINTIFF'S WHISTLEBLOWER CLAIM PURSUANT TO R.C. 4113.52(A)(2) WHICH DOES NOT REQUIRE PLAINTIFF TO FILE A REPORT WITH HIS EMPLOYER RELATED TO ENVIRONMENTAL ILLEGAL MISCONDUCT.

{¶16} "III. THE COURT BELOW ERRED BY FINDING THAT PLAINTIFF FAILED TO SATISFY THE JEOPARDY ELEMENT OF HIS TORT CLAIM FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY."

I. and II.

{¶17} In the first and second assignments of error, Appellant asserts the trial court erred in granting summary judgment finding Appellant did not state a whistleblower claim pursuant to R.C. 4113.52(A).

{¶18} As an appellate court reviewing summary judgment issues, we must stand in the shoes of the trial court and conduct our review on the same standard and evidence as the trial court. *Porter v. Ward,* Richland App. No. 07 CA 33, 2007–Ohio5301, 2007 WL 2874308, ¶ 34, citing *Smiddy v. Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the nonmoving party has no evidence to prove its case. The moving party must specifically point to some evidence that demonstrates that the nonmoving party cannot support its

claim. If the moving party satisfies this requirement, the burden shifts to the nonmoving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. A fact is material when it affects the outcome of the suit under the applicable substantive law. *See Russell v. Interim Personnel, Inc .* (1999), 135 Ohio App.3d 301, 304, 733 N.E.2d 1186.

**{¶19}** R.C. 4113.52 reads, in pertinent part,

**{¶20}** "(A)(1)(a) If an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that the employee's employer has authority to correct, and the employee reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation. If the employer does not correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the report, whichever is earlier, the employee may file a written report that provides sufficient detail to identify and describe the violation with the prosecuting authority of the county or municipal corporation where the violation occurred, with a peace officer, with the inspector general if the violation is within the inspector general's jurisdiction, or with any

other appropriate public official or agency that has regulatory authority over the employer and the industry, trade, or business in which the employer is engaged.

{¶21} "(b) If an employee makes a report under division (A)(1)(a) of this section, the employer, within twenty-four hours after the oral notification was made or the report was received or by the close of business on the next regular business day following the day on which the oral notification was made or the report was received, whichever is later, shall notify the employee, in writing, of any effort of the employer to correct the alleged violation or hazard or of the absence of the alleged violation or hazard.

{¶22} "(2) If an employee becomes aware in the course of the employee's employment of a violation of chapter 3704., 3734., 6109., or 6111. of the Revised Code that is a criminal offense, the employee directly may notify, either orally or in writing, any appropriate public official or agency that has regulatory authority over the employer and the industry, trade, or business in which the employer is engaged."

{¶23} Appellant indicated to his supervisor and to the Village Council the glycol was not being filtered out of the water and was being returned to the creek by the WWTP, where it would then become a hazard to the drinking water for all users situated below the plant. He indicated the glycol was upsetting the operation of the WTTP as it upset the bacteria balance in the plant causing the good bacteria to die and changing the consistency of the effluent material which damaged the pumps and other equipment. The dumping of the glycol threatened to cause the Village to violate is permit; thereby exposing the Village and its officials to criminal liability.

{¶24} The Village's permit was governed by R.C. 3745 and 6111, specifically provisions of R.C. 6111.60 and OAC 3745-33 and/or 3745-38. The permit specifies the

levels of various compounds, chemicals or elements permitted in the water and returned to the state's water supply following treatment. If the levels are exceeded, the Village is violating the law. R.C. 2927.24(B)(1) makes it unlawful to knowingly place a hazardous chemical or harmful substance in a public water supply. The statute provides for criminal penalties. Accordingly, we find Appellant complained of criminal conduct.

{¶25} The statute provides the employee "may notify, either orally or in writing, any appropriate public official or agency." There is no requirement Appellant actually file an additional written report with an enforcement agency in order to obtain protection under R.C. 4113.51(A). Oral disclosures are afforded protection under the statute, and the employer may not retaliate against the employee on account of the oral report.

{¶26} Furthermore, we find the Village has authority to correct the alleged illegal activity of CYT, even if the Village was not directly involved in criminal activity.

{¶27} Based upon the above, we conclude, when construing the evidence most favorably toward Appellant as required for purposes of summary judgment, the trial court erred in granting summary judgment in favor of Appellee Village.

{¶28} The first and second assignments of error are sustained.

III.

{¶29} In the third assignment of error, Appellant maintains his public policy claim for wrongful discharge lies in addition to his whistleblower claim. We disagree.

{¶30} In *Leininger v. Pioneer National Latex,* 115 Ohio St.3d 311, 875 N.E.2d 36, 2007-Ohio-4921, the Supreme Court of Ohio re-examined prior decisions involving the jeopardy analysis for public policy wrongful discharge claims. Justice Lanzinger, writing for the majority, stated the following at ¶ 27:

**{¶31}** "'It is clear that when a statutory scheme contains a full array of remedies, the underlying public policy will not be jeopardized if a common-law claim for wrongful discharge is not recognized based on that policy. The parties question what should happen if a statutory scheme offers something less than complete relief. Appellants urge this court to follow *Wiles [v. Medina Auto Parts,* 96 Ohio St.3d 240, 2002-Ohio-3994]*,* while appellee and her amici curiae advocate reliance on *Kulch [v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134]*;* both *Wiles* and *Kulch* are plurality opinions with regard to the issue pertinent to this case. After considering our prior decisions, we conclude that it is unnecessary to recognize a common-law claim when remedy provisions are an essential part of the statutes upon which the plaintiff depends for the public policy claim and when those remedies adequately protect society's interest by discouraging the wrongful conduct.'"

**{¶32}** We find the remedies provided in Appellant's statutory whistleblower claims adequately protect society's interest in discouraging the wrongful conduct at issue.

**{¶33}** In *Carpenter v. Bishop Well Services Corp.*, 2009 Ohio 6443, this Court held,

**{¶34}** "Appellant re-argues that the jeopardy standard as applied in *Leininger* does not apply when there are multiple-source public policies involved. Although it is true that *Leininger* addresses the issue of only one statute, its dicta cannot be overlooked.

**{¶35}** "Here, the statutes for 'whistle blowers' offer a statutory scheme for complete relief (R.C. 4115.35). In discussing multiple-source public policies, Justice

Lanzinger in *Leininger* at ¶ 26 noted the court's decision in *Wiles v. Medina Auto Parts,* 96 Ohio St.3d 240, 773 N.E.2d 526, 2002-Ohio-3994, ¶ 15:

**{¶36}** "'We noted that '[a]n analysis of the jeopardy element necessarily involves inquiring into the existence of any alternative means of promoting the particular public policy to be vindicated by a common-law wrongful-discharge claim.* * *Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests."

**{¶37}** Based upon the above, Appellant's third assignment of error is overruled.

**{¶38}** The judgment of the Morrow County Court of Common Pleas is affirmed in part; reversed in part; and the matter remanded for further proceedings in accordance with the law and this opinion.

By: Hoffman, P.J.

Delaney, J. and

Baldwin, J. concur

_____
HON. WILLIAM B. HOFFMAN

_____
HON. PATRICIA A. DELANEY

_____
HON. CRAIG R. BALDWIN

IN THE COURT OF APPEALS FOR MORROW COUNTY, OHIO
FIFTH APPELLATE DISTRICT

DONALD LEE                                    :
                                              :
    Plaintiff-Appellant                    :
                                              :
-vs-                                          :              JUDGMENT ENTRY
                                              :
VILLAGE OF CARDINGTON, OHIO                   :
                                              :
    Defendant-Appellee                     :              Case No. 12CA0017


For the reasons stated in our accompanying Opinion, the judgment of the Morrow County Court of Common Pleas is affirmed in part; reversed in part; and the matter remanded for further proceedings in accordance with the law and our opinion. Costs to be divided equally.


_____
HON. WILLIAM B. HOFFMAN


_____
HON. PATRICIA A. DELANEY


_____
HON. CRAIG R. BALDWIN