[Cite as *Sullivan v. Walsh Jesuit High School*, 2024-Ohio-2437.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| PETER SULLIVAN | | C.A. No. 30905 |
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| WALSH JESUIT HIGH SCHOOL | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | | CASE No. CV-2022-02-0440 |

DECISION AND JOURNAL ENTRY

Dated: June 26, 2024

FLAGG LANZINGER, Judge.

{¶1} Peter Sullivan appeals from the judgment of the Summit County Court of Common Pleas that granted Walsh Jesuit High School's ("Walsh Jesuit") motion to dismiss. For the following reasons, this Court affirms in part and reveres in part.

I.

{¶2} In 2022, Sullivan sued Walsh Jesuit for: (1) wrongful termination in violation of public policy; and (2) retaliation in contravention of Title IX. According to Sullivan's complaint, Walsh Jesuit hired Sullivan as its chief financial officer and employed him on an annual contract beginning in October 2013. Walsh Jesuit renewed Sullivan's annual contract from 2014-2020.

{¶3} Sullivan alleged that he discovered third-party payments into the tuition accounts of eleven students, ten of whom were student athletes, in October 2020. Of those ten student athletes, eight were male, and two were female. Sullivan alleged that he informed Walsh Jesuit's president of his discovery because he was concerned that the third-party payments into the student

athletes' tuition accounts may have violated the Ohio High School Athletic Association's ("OHSAA") recruiting bylaws.

**{¶4}** Sullivan alleged that Walsh Jesuit retained an outside investigator who conducted an independent investigation into the third-party payments. As a result of that investigation, Walsh Jesuit self-reported violations of OHSAA bylaws. OHSAA then imposed penalties against Walsh Jesuit, ordered corrective actions, and imposed a fine.

**{¶5}** Sullivan alleged that Walsh Jesuit's president informed him that Walsh Jesuit was considering not renewing his annual employment contract in February 2021. In April 2021, Walsh Jesuit formally notified Sullivan that it was not renewing his employment contract.

**{¶6}** As noted, Sullivan sued Walsh Jesuit, asserting claims for: (1) wrongful termination in violation of public policy; and (2) retaliation in contravention of Title IX. Walsh Jesuit moved to dismiss Sullivan's complaint under Civ.R. 12(B)(6), arguing that Sullivan could not assert a claim for wrongful termination in violation of public policy because he was a contract employee, not an at-will employee. In support of Walsh Jesuit's argument, it cited the Ohio Supreme Court's decision in *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St.3d 228, 234 (1990), for the proposition that only at-will employees (not contract employees like Sullivan) can bring a cause of action for wrongful termination in violation of public policy.

**{¶7}** Walsh Jesuit also argued that, even if Sullivan could bring this type of claim, he could not bring one premised upon policies embodied in Title IX because Title IX itself provides sufficient remedies directly under that statute. Walsh Jesuit concluded that "[t]he proper method for [Sullivan] to seek redress for alleged violations under Title IX is to pursue a claim directly under the statute – which [Sullivan] did."

{¶8} Regarding Sullivan's claim for Title IX retaliation, Walsh Jesuit argued that Sullivan failed to set forth a claim because Sullivan did not set forth any facts that could prove a causal connection between Sullivan's protected activity (i.e., reporting that male student athletes were receiving greater financial assistance than female student athletes) and the adverse employment action (i.e., the non-renewal of his employment contract). Walsh Jesuit asserted that, per Sullivan's complaint, nearly six months passed between when Sullivan informed Walsh Jesuit's president of the third-party payments and when Walsh Jesuit formally notified Sullivan that it would not be renewing his employment contract. Walsh Jesuit argued that Sullivan was required to set forth "some additional evidence to establish causality in the wake of the extended passage of time, but failed to do so." As a result, Walsh Jesuit argued that Sullivan's complaint failed to set forth a prima facie case of retaliation under Title IX.

{¶9} The trial court granted Walsh Jesuit's motion to dismiss. In doing so, the trial court determined that Sullivan could not bring a claim for wrongful termination in violation of public policy under *Greeley* because Sullivan was a contract employee, not an at-will employee. The trial court also determined that Sullivan could not bring a claim for wrongful termination premised upon the public policies embodied in Title IX because Title IX itself provided sufficient remedies. As discussed in more detail below, a careful review of the trial court's order indicates that the trial court did not address Sullivan's claim for Title IX retaliation as a standalone claim, that is, as a statutory claim independent of Sullivan's common-law claim for wrongful termination in violation of public policy.

{¶10} Sullivan now appeals, raising two assignments of error for this Court's review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT IMPROPERLY GRANTED WALSH JESUIT'S MOTION TO DISMISS SULLIVAN'S CLAIM FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY.

{¶11} In his first assignment of error, Sullivan argues that the trial court erred by granting Walsh Jesuit's motion to dismiss on his claim for wrongful termination in violation of public policy. This Court disagrees.

{¶12} A Civ.R. 12(B)(6) motion tests the sufficiency of the complaint, and dismissal is appropriate if the complaint "fail[s] to state a claim upon which relief can be granted." In construing a motion to dismiss under Civ.R. 12(B)(6), the court "must presume all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). Before the court may dismiss the complaint, it must appear beyond doubt that plaintiff can prove no set of facts entitling the plaintiff to recovery. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242 (1975), syllabus. This Court reviews an order granting a Civ.R. 12(B)(6) motion to dismiss de novo. *Perrysburg Twp. v. City of Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5.

{¶13} With the above standard in mind, we note that "Ohio is a notice-pleading state[,]" and a "plaintiff is not required to prove his or her case at the pleading stage." *Maternal Grandmother v. Hamilton Cty. Dept. of Job & Family Servs.*, 167 Ohio St.3d 390, 2021-Ohio-4096, ¶ 10, 16; *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145 (1991). "[O]utside of a few specific circumstances, * * * a party will not be expected to plead a claim with particularity." *Maternal Grandmother* at ¶ 10. "Rather, 'a short and plain statement of the claim' will typically do." *Id.*, quoting Civ.R. 8(A).

{¶14} In *Greeley*, the Ohio Supreme Court held that an at-will employee can bring a cause of action for wrongful termination in violation of public policy. *Greeley*, 49 Ohio St.3d at 234-235. The Ohio Supreme Court later clarified that *Greeley* is specifically limited to at-will employees. *Haynes v. Zoological Soc. of Cincinnati*, 73 Ohio St.3d 254, 258 (1995) ("In order for an employee to bring a cause of action pursuant to *Greeley*, * * * that employee must have been an employee at will."). This Court–as it must–has followed this precedent and held that a contract employee cannot bring a claim for wrongful termination in violation of public policy. *Deadwyler v. Akron Bd. of Edn.*, 9th Dist. Summit No. 21549, 2003-Ohio-7173, ¶ 14 (affirming the trial court's dismissal of a contract employee's claim because "[o]nly an employee at will may bring a cause of action under the public policy exception to the at-will employment doctrine."); *State v. Culgan*, 9th Dist. Medina No. 09CA0060-M, 2010-Ohio-2992, ¶ 15 ("[T]his Court is bound by the precedent of the Supreme Court of Ohio."). As the Second District Court of Appeals succinctly stated, "Ohio courts have never recognized a claim for the wrongful termination of a contract employee in violation of public policy." *Schutte v. The Danis Companies*, 141 Ohio App.3d 824, 832 (2d Dist.2001), citing *Greeley* and *Haynes*.

{¶15} In light of the established precedent holding that a contract employee cannot bring a claim for wrongful termination in violation of public policy, this Court holds that the trial court did not err when it granted Walsh Jesuit's motion to dismiss on that claim. Sullivan's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT IMPROPERLY GRANTED WALSH JESUIT'S MOTION TO DISMISS SULLIVAN'S CLAIM FOR RETALIATION IN CONTRAVENTION OF TITLE IX.

{¶16} In his second assignment of error, Sullivan argues that the trial court erred by granting Walsh Jesuit's motion to dismiss on his claim for Title IX retaliation. The same standard of review set forth in Sullivan's first assignment of error applies to Sullivan's second assignment of error.

{¶17} Title IX, with certain exceptions, provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. 1681(a). The United States Supreme Court has recognized that Title IX provides a private cause of action for those who are retaliated against for reporting sex discrimination. *Jackson v. Birmingham Bd. of Edn.*, 544 U.S. 167, 173 (2005). ("Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action."). In doing so, the Supreme Court stated that Title IX is broadly worded, and "it does not require that the victim of the retaliation must also be the victim of the discrimination that is the subject of the original complaint." *Jackson* at 179. In other words, Title IX provides a private cause of action for those who are retaliated against for advocating for the rights of others. *See Jackson* at 176-177 ("Retaliation for [a basketball coach's] advocacy of the rights of the girls' basketball team in this case is 'discrimination' 'on the basis of sex[.]'").

{¶18} "Title IX has no administrative exhaustion requirement and no notice provisions." *Fitzgerald v. Barnstable School Commt.*, 555 U.S. 246, 247 (2009). "Plaintiffs can file directly in court under [Title IX's] implied private right of action and can obtain the full range of remedies[,]" including injunctive relief and damages. *Id.* "Title IX claims can be brought in state court; federal-

court jurisdiction over Title IX claims is not exclusive." *Arlington Indep. School Dist. v. Williams*, Tex.App. Nos. 02-23-00142-CV, 02-23-00155-CV, 2023 WL 8643040, *8 (Dec. 14, 2023).

{¶19} To state a claim for Title IX retaliation, a plaintiff must allege that: (1) he engaged in protected activity; (2) the defendant knew of the protected activity; (3) he suffered an adverse employment action; and (4) a causal connection existed between the plaintiff's protected activity and the adverse employment action. *Wiler v. Kent State Univ.*, N.D.Ohio No. 5:20-CV-490, 2021 WL 809350, *7 (Mar. 3, 2021).

{¶20} A close review of the trial court's order that granted Walsh Jesuit's motion to dismiss indicates that the trial court only analyzed Sullivan's claim for Title IX retaliation in connection with his claim for wrongful termination in violation of public policy. For example, when purportedly addressing Sullivan's claim for Title IX retaliation, the trial court stated:

> [T]he United States Supreme Court has determined that there are multiple remedies which exist under Title IX for alleged violations of its policies. * * * Thus, since sufficient other remedies exists, Sullivan cannot bring a claim for wrongful discharge in violation of Title IX. Likewise, and as previously held, the public policy exception applies only to "at will" employees, not individuals who are employed pursuant to a contract.

Additionally, the trial court stated that Sullivan cited no authority for his position that "an individual who is subject to an employment contract can bring a Title IX retaliation, *or put differently, termination in violation of public policy claim*." (Emphasis added.) This conflates Sullivan's second cause of action (i.e., Title IX retaliation) with his first cause of action (termination in violation of public policy). But, as Sullivan argues on appeal, these are separate claims.

{¶21} As noted, Sullivan asserted a separate cause of action for Title IX retaliation in his complaint. Sullivan alleged that he engaged in legally protected activity by reporting potential violations of Title IX, namely, that Walsh Jesuit was providing male student athletes with greater

financial assistance than female student athletes. Sullivan alleged that Walsh Jesuit retaliated against him for engaging in this protected activity by choosing not to renew his employment contract. As a result, Sullivan alleged that he suffered damages.

{¶22} In its motion to dismiss below, Walsh Jesuit argued that Sullivan failed to set forth a claim for Title IX retaliation because Sullivan did not set forth any facts that could prove a causal connection between Sullivan's protected activity (i.e., reporting that male student athletes were receiving greater financial assistance than female student athletes) and the adverse employment action (i.e., the non-renewal of his employment contract). Walsh Jesuit asserted that, per Sullivan's complaint, nearly six months passed between when Sullivan informed Walsh Jesuit's president of the third-party payments and when Walsh Jesuit formally notified Sullivan that it would not be renewing his employment contract. Walsh Jesuit argued that Sullivan was required to set forth "some additional evidence to establish causality in the wake of the extended passage of time, but failed to do so." Walsh Jesuit then cited federal caselaw involving motions for summary judgment wherein the courts acknowledged that an employee must couple temporal proximity with other evidence of retaliatory conduct when "some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action * * *." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir.2008).

{¶23} This case was decided on a motion to dismiss under Civ.R. 12(B)(6), not on a motion for summary judgment under Civ.R. 56(C). The fact that Sullivan may ultimately be unable to prove that a causal connection existed between the protected activity and the adverse employment action does not mean that Sullivan failed to state a claim for purposes of Civ.R. 12(B)(6). *See York*, 60 Ohio St.3d at 145 ("[A] plaintiff is not required to prove his or her case at the pleading stage."). Presuming all factual allegations of Sullivan's complaint are true and

making all reasonable inferences in his favor, this Court concludes that Sullivan set forth sufficient facts to survive a motion to dismiss for failure to state a claim on his claim from Title IX retaliation. The trial court, therefore, erred by granting Walsh Jesuit's motion to dismiss on Sullivan's claim for Title IX retaliation. Sullivan's second assignment of error is sustained.

### III.

**{¶24}** Sullivan's first assignment of error is overruled. Sullivan's second assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part.

Judgment affirmed in part,
and reversed in part.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____

JILL FLAGG LANZINGER
FOR THE COURT


STEVENSON, P. J.
SUTTON, J.
CONCUR.


APPEARANCES:

PETER C. MAPLEY, Attorney at Law, for Appellant.

VINCENT J. TERSIGNI and JULIA L. DENMEADE, Attorneys at Law, for Appellee.