[Cite as *Logan v. Champaign Cty. Bd. of Elections*, 2025-Ohio-297.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| JODI L. LOGAN | : | |
| | : | |
| Appellant | : | C.A. No. 2024-CA-13 |
| | : | |
| v. | : | Trial Court Case No. 2023 CV 026 |
| | : | |
| CHAMPAIGN COUNTY BOARD OF ELECTIONS, ET AL. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Appellees | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on January 31, 2025

. . . . . . . . . . .

RICK L. BRUNNER, PATRICK M. QUINN, & HANNAH FARD, Attorneys for Appellant

JEFFREY A. STANKUNAS & RYAN C. SPITZER, Attorneys for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Plaintiff-Appellant Jodi L. Logan appeals from the trial court's judgment granting Defendants-Appellees' motion for judgment on the pleadings with respect to her declaratory judgment and wrongful termination in violation of public policy claims. Because we conclude that Logan failed to demonstrate that her termination was in

contravention of a clear public policy, she has failed to meet the clarity element of her wrongful termination claim. Additionally, she failed to demonstrate that there was a justiciable controversy between the parties, as she sought neither a determination regarding the rights, status, or other legal relations between the parties nor a determination of a question of construction or validity arising under a constitutional provision, statute, or rule. Accordingly, for the reasons outlined below, we affirm the judgment of the trial court.

I.      Facts and Course of Proceedings

{¶ 2} Logan formerly served as Deputy Director of the Champaign County Board of Elections ("the Board"). In May 2022, Logan was placed on administrative leave from her position as Deputy Director pending an investigation into allegations that she had failed to follow established protocol within the office and had made false statements to the Board after she reportedly raised concerns to the Ohio Secretary of State about possible election procedure violations by certain members of the Board. In July 2022, Logan's employment with the Board was terminated.

{¶ 3} In September 2022, Logan commenced this action in the Franklin County Court of Common Pleas asserting claims for wrongful termination in violation of public policy and declaratory judgment against the Board, the director of the Board, the chairperson of the Board, and three members of the Board (collectively "the Champaign County Defendants"), and the Secretary of State. In her complaint, Logan claimed that she had observed certain violations of the Secretary of State's election directives and

office security requirements and additional actions and associations that created an appearance of impropriety during early voting in April 2022. She alleged that the Board's Director had failed to keep a record of people who entered the Board's offices during early voting, met with candidates alone, and voiced support for a particular candidate in a contested primary. She also alleged that procedures pertaining to the security and tabulating of absentee ballots had not been followed.

{¶ 4} Logan's allegations specifically concerned actions of the Champaign County Defendants that purportedly violated the Secretary of State's election directives. The Secretary of State had issued the election directives and advisories upon which the allegations against the Champaign County Defendants arose and was named in this action as the chief elections officer of the state. In her complaint, Logan set forth the following statutory provisions concerning the authority of the Secretary of State:

13. Pursuant to ORC § 3501.05(B) the Ohio Secretary of State shall issue instructions by directives and advisories to the Champaign County Board of Elections as to the proper methods of conducting elections to members of Board of Elections.

14. Pursuant to ORC § 3501.05(C) the Ohio Secretary of State shall issue rules and instructions to the Champaign County Board of Elections for the conduct of elections.

15. Pursuant to ORC § 3501.05(N) the Ohio Secretary of State shall investigate irregularities in elections.

16. Pursuant to ORC § 3501.053(A) the Ohio Secretary of State may issue

instructions as to the proper way of conducting elections to members of Board of Elections by permanent or temporary directives.

{¶ 5} According to Logan, pursuant to R.C. 3501.05(B) and R.C. 3501.053, the Secretary of State issued election directive 2021-10, which mandated a bipartisan team in election procedures and provided that the boards of elections must provide voters with 24/7 access to the secure receptacle, that the secure receptacle must be monitored 24/7, and that at least once daily, one Republican and one Democratic member of the board or board staff must together check, retrieve the contents, and re-lock the receptacle.

{¶ 6} The Secretary of State also issued election directive 2020-12, which outlined security measures and provided that the board of elections must mitigate security vulnerabilities and adopt a security policy regarding the overall security of its office. At a minimum, each board was required to have an after-hours monitored security system to cover the rooms used to store the voting equipment, ballots, tabulation, and voter registration servers and to maintain restricted access, sign-in, and supervision of visitors to areas of the board's office that house the voting equipment, election materials, tabulation, and voter registration servers, networks, and computers.

{¶ 7} Logan also set forth certain provisions from the ethics policy adopted by the Secretary of State. Under the ethics policy, members and employees of the boards of elections were to avoid actions and associations that created an appearance of impropriety, undermined public confidence in Ohio elections officials, or interfered with the performance of duties by Ohio elections officials. Additionally, all members and employees of the boards of elections were required to sign a statement indicating their

knowledge of and familiarity with Ohio ethics laws and the Secretary of State's ethics policy. Questions about the ethics policy could be addressed to the board's legal counsel, the county prosecuting attorney, the county elections attorney, or the Ohio Ethics Commission. Violations of the ethics policy could be reported to the director of elections in the Secretary of State's office, and reports could be made anonymously by mailing a written statement in a sealed envelope to the Secretary of State's office to the attention of the director of elections. According to Logan, the Board did not develop a chain of command policy for the Director and Deputy Director but did adopt a policy related to security in the office, which stated:

"a. Do not go into the ballot room without both a Dem & Rep

b. Always handle ballots and all election material in pairs Dem & Rep"

**{¶ 8}** Despite the foregoing directives and policies, Logan alleged that she had observed violations of election procedures during early voting for the May 2022 primary election. As a result, she verbally reported her concerns to the Board's Director and Chairperson, but the violations allegedly continued. She then contacted the Secretary of State's office regarding her concerns, seeking guidance and claiming that the ethics policy from the Secretary of State required her to report violations of election procedures and gave her a reasonable expectation of anonymity in reporting.

**{¶ 9}** In response to Logan's allegations and concerns, the Secretary of State's office sent a letter to the Board on April 29, 2022, reporting that the office had received calls from several concerned constituents regarding lack of bipartisan oversight and requiring a written response from the Board by May 16, 2022, regarding the allegations

of improper procedure.

{¶ 10} By letter dated May 16, 2022, the Chairperson responded to the Secretary of State's office regarding the reported concerns. In the letter, the Chairperson stated that the Board immediately met with the Director, Logan, and the security employee regarding the allegations, noting that Logan stated that she had heard from others about the concerns but that she had no personal knowledge of the same, and thus, she had not brought such issues to the Board prior to its receipt of the April 29 letter. The Board stated that, when Logan was asked why she had not brought those issues to the Board, she indicated that she had not believed there was anything to report. At the conclusion of the letter, the Chairperson extended appreciation to the office for identifying the names of the complainants, indicating that it helped with the Board's investigation. Logan did not receive a copy of the Board's response letter, and on May 23, 2022, she sought further clarification by email from the Secretary of State's office regarding proper election procedures related to her concerns.

{¶ 11} On May 26, 2022, the Board placed Logan on administrative leave by letter, wherein she was advised that: she had failed to follow the chain of command and report any perceived violations of election procedures to the Director and the Board; she had provided false statements to the Board by denying when asked whether she had reported perceived violations of election procedures to the Secretary of State's office; and she had failed to follow protocol for her benefit but to the detriment of her work office.

{¶ 12} On July 18, 2022, Logan was advised by letter that the Board had concluded its investigation into the allegations against her but invited her to meet with the Board and

truthfully answer all questions posed. Logan attended the meeting, appearing with her legal representative and providing a verbal statement to the Board through counsel.

{¶ 13} Thereafter, the Board made several findings, including: Logan was an unclassified employee; she failed to report perceived election violations to the Board and, instead, made a complaint to the Secretary of State's office, thereby failing to follow the chain of command; the Board learned from the Secretary of State's office that Logan had made a complaint to the office with her concerns; Logan had lied to the Board by claiming that she had no personal knowledge of any alleged violations in election procedure and had no knowledge regarding the basis of the complaint to the Secretary of State's office; and Logan had breached her fiduciary duty to the Board by withholding information critical to the Board's investigation. The Board concluded, among other things, that Logan had been insubordinate by lying to the Board, had failed to disclose her perceived allegations of election violations within the work office, and had failed to follow the chain of command, which delayed the Board's review of the allegations and ability to remedy any violations. The Board noted that its findings of misconduct were not related to Logan's reporting of alleged violations to the Secretary of State. The Board terminated Logan's employment.

{¶ 14} In her complaint, Logan sought a declaratory judgment, reinstatement of her employment to her previous position, and back pay with benefits and attorney's fees. She alleged that she had been subjected to disparate and discriminatory employment standards and had been wrongfully terminated as the Board sought to cover up its wrongdoing. She also alleged that the Secretary of State had an interest in the outcome of the proceedings. Because the Secretary of State was named as a defendant, Logan

initially brought the action in the Franklin County Common Pleas Court pursuant to Civ.R. 3(C)(4), which requires that an action brought against an officer in the officer's official capacity must be brought in the county where the officer maintained his principal office.

{¶ 15} The Secretary of State filed a motion to dismiss Logan's complaint against him pursuant to Civ.R. 12(B)(1) and 12(B)(6). The Champaign County Defendants also filed a motion to dismiss the Secretary of State pursuant to Civ.R. 12(B)(1), (2), (3) and (6) and to transfer the matter to the proper venue. The Champaign County Defendants argued that venue in Franklin County was improper because it was solely based upon joining the Secretary of State to the action as an "interested party."

{¶ 16} The Franklin County Common Pleas Court granted the Secretary of State's motion to dismiss, finding that he was not a proper party to the action, which rendered moot the Champaign County Defendants' motion to dismiss with respect to him. The court then granted the Champaign County Defendants' motion to change venue, transferring the case to the Champaign County Court of Common Pleas.

{¶ 17} The Champaign County Defendants then filed a second Civ.R. 12(B)(6) motion to dismiss in the Champaign County court for failure to state a claim, which Logan sought to strike as improper and untimely. The trial court ultimately denied Logan's motion to strike and granted the Champaign County Defendants' motion to dismiss on the merits, thereby dismissing Logan's complaint as to the remaining Defendants. Logan appealed.

{¶ 18} On appeal, Logan argued that the Franklin County Common Pleas Court had erred in granting the Secretary of State's motion to dismiss and that the Champaign County Common Pleas Court had erred in granting a second motion to dismiss by the

Champaign County Defendants. We concluded that there was no error in dismissing Logan's declaratory judgment action against the Secretary of State but agreed that the trial court had erred in granting the Champaign County Defendants' successive Civ.R. 12(B) motion. *Logan v. Champaign Cty. Bd. of Elections*, 2023-Ohio-4688, ¶ 35, 45 (2d Dist.). We explained that the Champaign County Defendants had not waived their right to raise their defense for failure to state a claim; rather, they had only forfeited their opportunity to raise that defense in the context of a successive Civ.R. 12 motion, other than one for judgment on the pleadings. *Id.* at ¶ 46. We then remanded the matter. *Id.* at ¶ 47.

{¶ 19} Thereafter, the Champaign County Defendants filed an answer to Logan's complaint and a motion for judgment on the pleadings, arguing that (1) Logan had failed to assert a justiciable controversy because her declaratory judgment request challenged specific facts, not the validity of a statute or administrative regulation and (2) Logan had failed to identify a public policy that manifested from a state or federal constitution, statute, administrative regulation, or the common law.

{¶ 20} The trial court agreed with the Champaign County Defendants and granted their motion for judgment on the pleadings, finding that Logan had failed to allege a justiciable issue suitable for resolution in a declaratory judgment action and that the directives and ethics policy upon which she relied with respect to her wrongful termination claim did not establish a clear public policy that was necessary to satisfy the clarity element for wrongful discharge in violation of public policy. Logan appeals.

II.     The Trial Court Did Not Err by Dismissing Logan's Wrongful Termination Claim

{¶ 21} Logan's first assignment of error states:

The trial court erred in applying an incorrect standard and in prematurely granting Appellees' motion for judgment on the pleadings where the Complaint adequately pled a cause of action for wrongful termination in violation of public policy.

{¶ 22} In her first assignment of error, Logan asserts several arguments. She initially contends that the trial court erred when it failed to construe all the allegations in her complaint as true and in her favor. She argues that the trial court did not properly apply the Civ.R. 12(C) standard because the court failed to accept all allegations in her complaint as true, overlooked reasonable inferences that should be drawn in her favor, prematurely assessed the evidence by evaluating and weighing its credibility, and dismissed the complaint even though it was not beyond doubt that Logan could prove no set of facts entitling her to relief. She argues that the trial court prematurely adjudicated the merits of her wrongful termination claim and rendered its decision before fully exploring the factual allegations. Logan claims that the facts were disputed and that her wrongful termination claim could not be dismissed without proper adjudication of the facts by a jury. She also contends that the court erred in finding no violation of the public policy in election law and the Secretary of State's directives, arguing that: the public policy exception elements were met; the allegations in her complaint averred a sufficiently clear public policy that established the clarity element; a sufficiently clear public policy was established through election law, the ethics policy, and the directives of the Secretary of

State; and the trial court's overly narrow interpretation and application of the public policy exception constituted reversible error.

{¶ 23} A Civ.R. 12(C) motion for judgment on the pleadings presents questions of law, the determination of which is restricted solely to the allegations in the pleadings and any writings attached to the pleadings. *Peterson v. Teodosio*, 34 Ohio St.2d 161 (1973); Civ.R. 10(C). "Civ.R. 12(C) provides that, after the pleadings are closed, but within a time as to not delay the trial, any party can move for judgment on the pleadings." *Trimbach v. Bath Twp.,* 2021-Ohio-2058, ¶ 6 (2d Dist.). " 'Determination of a motion for judgment on the pleadings is restricted solely to the allegations in the pleadings and any writings attached to the complaint." *Id.*, quoting *Offil v. State Farm Fire & Cas. Co.*, 2012-Ohio-6225, ¶ 14 (2d Dist.). A motion for judgment on the pleadings is essentially a Civ.R. 12(B) motion to dismiss filed after the pleadings are closed. *Id.*, citing *Cirino v. Bur. of Workers' Comp.*, 2021-Ohio-1382, ¶ 14 (10th Dist.).

{¶ 24} " 'Unlike a Civ.R. 56 motion for summary judgment, which authorizes the court to evaluate evidentiary materials submitted for their probative worth, Civ.R. 12(C) imposes a structural test: whether on their face the pleadings foreclose the relief requested." *Id.* at ¶ 7, quoting *Greenview Local School Dist. Bd. of Edn. v. Staffco Constr., Inc.*, 2016-Ohio-7321, ¶ 12 (2d Dist.). "The non-moving party is entitled to have all the material allegations in the pleadings construed in his [or her] favor as true." *Id.*, citing *Greenview Local School Dist. Bd. of Edn.* at ¶ 11. "The trial court may grant a judgment on the pleadings only where no material factual issue exists and one of the parties is entitled to judgment as a matter of law." *Id.*, citing *Discover Bank v. Swartz*, 2016-Ohio-

2751, ¶ 14 (2d Dist.). We review motions for judgment on the pleadings de novo. *Crenshaw v. Jones*, 2022-Ohio-3913, ¶ 6 (8th Dist.), citing *Perrysburg Twp. v. Rossford*, 2004-Ohio-4362, ¶ 5.

**{¶ 25}** In Ohio, the common-law doctrine of employment-at-will generally governs employment relationships. *Wiles v. Medina Auto Parts*, 2002-Ohio-3994, ¶ 5. "Under this doctrine, a general or indefinite hiring is terminable at the will of either the employee or the employer; thus, a discharge without cause does not give rise to an action for damages." *Id.*, citing *Collins v. Rizkana*, 73 Ohio St.3d 65, 67 (1995); *see also Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100 (1985), paragraph one of the syllabus.

**{¶ 26}** However, in response to perceived abuses of the employment-at-will doctrine, and following the trend of other states, the Supreme Court of Ohio recognized a cause of action in tort for wrongful discharge in violation of public policy. In *Greeley v. Miami Valley Maintenance Contrs., Inc.,* 49 Ohio St.3d 228, 234-35 (1990), the Court recognized a public policy exception to the employment-at-will doctrine based on a violation of a specific statute. "[A]fter *Greeley,* an employee terminated in violation of a statute could maintain a common-law action for damages." *Wiles* at ¶ 5.

**{¶ 27}** Subsequent to *Greeley*, the Supreme Court expanded and refined the scope of the tort of wrongful discharge, holding that "a valid *Greeley* claim is not limited to situations where the discharge violates a statute." *Wiles* at ¶ 6. "The existence of such a public policy may be discerned by the Ohio judiciary based on sources such as the Constitutions of Ohio and the United States, legislation, administrative rules and regulations, and the common law." *Painter v. Graley*, 70 Ohio St.3d 377, 384 (1994). In

other words, "if an employee is discharged or disciplined in contravention of a clear public policy articulated in the Ohio or United States Constitution, federal or state statutes, administrative rules and regulations, or common law, a cause of action for wrongful discharge in violation of public policy may exist as an exception to the general rule." *Dohme v. Eurand Am., Inc.,* 2011-Ohio-4609, ¶ 11, citing *Painter* at paragraph three of the syllabus and *Greeley* at paragraph one of the syllabus. However, "an exception to the traditional doctrine of employment-at-will should be recognized only where the public policy alleged to have been violated is of equally serious import as the violation of a statute." *Painter* at 384, citing *Greeley* at 234.

{¶ 28} "To be successful in a wrongful discharge in violation of public policy claim, a plaintiff must demonstrate: (1) *Clarity* - That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in common law; (2) *Jeopardy* – That dismissing employees under these circumstances would jeopardize the public policy; (3) *Causation* – The dismissal was motivated by conduct related to that public policy; and (4) *Justification* – The employer lacked an overriding legitimate business justification for the dismissal." *Trimbach*, 2021-Ohio-2058, at ¶ 9 (2d Dist.), citing *Miracle v. Ohio Dept. of Veterans Servs.*, 2019-Ohio-3308, ¶ 12. "The *clarity* and *jeopardy* elements are questions of law for the court to decide, and the elements of *causation* and *justification* are questions of fact to be determined by the fact-finder." (Emphasis in original.) *Id.* at ¶ 10, citing *House v. Iacovelli*, 2020-Ohio-435, ¶ 12.

{¶ 29} Logan's wrongful termination claim was grounded in common law tort. The crux of her claim was based on the election directives issued by and the ethics policy

adopted by the Secretary of State. Logan maintains that the ethics policy required her to report violations in election procedures and that she had a reasonable expectation of anonymity regarding her reports. When questioned about the allegations by the Board, she suggested that the ethics policy gave her the right to remain anonymous, and as a result, she did not reveal to the Board that she had reported her concerns to the Secretary of State. She further believes that she was terminated in order for the Board to avoid embarrassment due to its wrongdoing and failure to properly administer elections.

{¶ 30} In support of her argument, Logan points out that R.C. 3501.05 provides the duties of the Secretary of State and requires the Secretary of State to issue instructions regarding election duties by directives; to prepare rules and instructions for the conduct of elections; to investigate the administration of election laws, frauds, and irregularities in elections in any county; and to report violations of election laws to the attorney general or prosecuting attorney. She contends that she reported the alleged violations because of the directives and based on the ethics policy (where it was noted that violations may be reported to the Secretary of State and may be made anonymously in writing).

{¶ 31} Here, at issue in the trial court was whether the allegations in Logan's complaint were insufficient as a matter of law to satisfy the clarity element of her wrongful discharge claim. The clarity element of the claim requires a plaintiff to allege facts "demonstrating that the employer's act of discharging him contravened a 'clear public policy.' " *Painter*, 70 Ohio St.3d at 383. "Under the clarity element analysis, an employee cannot simply allege that clear public policy exists because of a general societal interest, but rather must set forth a specific law." *Creveling v. Lakepark Indus., Inc.,* 2021-Ohio-

764, ¶ 52 (6th Dist.), citing *Dohme*, 2011-Ohio-4609. "The courts of Ohio generally have found that *Greeley* claims cannot lie with every public policy, even 'good' ones, and appropriately so. Without these limitations, *Greeley* claims could evolve from exceptions to the employment at-will doctrine to the rule itself." *Crowley v. St. Rita's Med. Ctr.*, 931 F.Supp.2d 824, 831 (N.D. Ohio 2013). Still, what constitutes a "clear public policy" remains the subject of debate. In *Dohme,* the Court set forth certain examples of clear public policies, including "assisting investigations, permitting Occupational Safety and Health Administration ("OSHA") complaints, ensuring public safety, and eliminating unsafe working conditions." Dohme, 2011-Ohio-4609, at ¶ 18,

{¶ 32} In their motion for judgment on the pleadings, the Champaign County Defendants argued that Logan had failed to satisfy the clarity element of her claim. In agreeing with the Champaign County Defendants, the trial court observed that, while the elections directives cited by Logan were issued under Ohio Adm. Code 111:3-1-01 (which authorizes permanent and temporary directives from the Secretary of State regarding the proper method of conducting an election), Logan could not simply allege that a clear public policy precluding her termination arose from the directives and ethics policy; rather, she was required to set forth a specific law evincing that public policy.

{¶ 33} The trial court then engaged in a lengthy, thoughtful analysis setting forth examples of statutes and regulations that may substantiate such public policy, including statutes addressing workplace safety (*e.g.,* Occupational Safety and Health Act (OSHA) making it illegal to terminate an employee in retaliation for filing a complaint or instituting a proceeding with OSHA under 29 U.S.C. 660(c)(1), and R.C. 4101.11 and R.C. 4101.12

requiring employers to provide a safe workplace); workers' compensation (*e.g.,* R.C. 4123.90 prohibiting an employer from discharging, demoting, reassigning, or taking any punitive action against any employee because the employee filed a claim or instituted a proceeding under the workers' compensation act for an injury or disease which occurred in the course of employment with that employer); unemployment compensation; public health and safety (*e.g.,* 49 U.S.C. 44701 et seq. authorizing the Federal Aviation Administration to regulate the production of aircraft, perform inspections, and set forth standards); food and drug safety; and mandatory reporting (*e.g.,* R.C. 2151.421 requiring mandatory reporters to immediately report that a child has suffered or faces a threat of suffering abuse or neglect or face criminal prosecution for failing to report).

**{¶ 34}** The court determined that Logan had not identified a constitutional provision, statute, administrative rule, or common law principle that articulated the clear public policy needed to satisfy the clarity element of a wrongful discharge claim. It reasoned that the election directives made no provision for employees who reported violations to remain anonymous and did not prohibit retaliation against employees who made such reports. In coming to its conclusion, the trial court relied, in part, on our reasoning in *Trimbach* and, in particular, on Judge Michael L. Tucker's concurring opinion, which we find persuasive. Concurring with the majority, Judge Tucker stated that " 'any exception to the employment-at-will doctrine should be narrowly applied.' " *Trimbach*, 2021-Ohio-2058, at ¶ 21 (2d Dist.) (Tucker, J., concurring), quoting *McGlothen v. City of Fairborn*, 2019-Ohio-141, ¶ 18 (2d Dist.), citing *Dean v. Consol. Equities Realty #3, L.L.C.*, 2009-Ohio-2480, ¶ 12 (1st Dist.). Judge Tucker explained, "Supreme Court

caselaw seems to support the conclusion that, to meet the clarity element, *the public policy must either require employee reporting, prohibit retaliation for reporting, or relate to employee or public safety.*" (Emphasis added.) *Id.* at ¶ 24, citing *Crowley*, 931 F.Supp.2d at 830 (N.D. Ohio), citing *Sutton v. Tomco Machining, Inc.*, 2011-Ohio-2723 (clarity element met where statute protects an employee who asserts a workers compensation claim); *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134 (1997) (clarity element met when public policy is employee safety as reflected by the federal OSHA statute (29 U.S.C. 660 (c)) and related Ohio statutes).

**{¶ 35}** Our task is to determine whether the conduct Logan alleged to have occurred violated a "clear public policy" of this state. Logan was required to allege facts demonstrating that the Champaign County Defendants' act of discharging her contravened a clear public policy derived from the state or federal constitution, a statute or administrative regulation, or common law.

**{¶ 36}** We agree with the trial court that members of boards of elections act under the control of the Secretary of State. A board's duties are set forth in R.C. 3501.11 and include the appointment and removal of the director, deputy director, and employees; the investigation of irregularities, nonperformance of duties, or certain violations of the Revised Code by election officers and other persons; and the reporting of facts related to any investigation to the Secretary of State. Accordingly, upon receiving Logan's complaints regarding the Champaign County Defendants, the Secretary of State referred the matter for investigation by the Board, which also had the duty to administer oaths, issue subpoenas, summon witnesses, and compel the production of evidence in

connection with any such investigation. While Logan claims that she had a reasonable expectancy of anonymity under the ethics policy, the thoroughness of any investigation required by the Board would have been hindered if persons who reported possible violations, such as Logan, could not have been compelled to give evidence to the Board regarding those alleged violations.

{¶ 37} Upon our review of her complaint, we conclude that Logan did not cite any specific statement of law in support of her public policy claim that was drawn from the federal or state constitution, federal or state statutes, administrative rules and regulations, or common law. Logan had the obligation to specify the sources of law that supported the clear public policy upon which she relied for her claim. Without specific sources of law, she had not articulated the clarity element with specificity. *See Dohme,* 2011-Ohio-4609. As a result, Logan failed to establish that her discharge was "in contravention of a clear public policy articulated in the Ohio or United States Constitution, federal or state statutes, administrative rules and regulations, or common law," and her action failed "because establishment of the clarity element is essential to the survival" of her claim. *Id.* at ¶ 25.

{¶ 38} We want to emphasize that there is no question that maintaining the integrity of election procedures is important. However, not every important issue qualifies as one that satisfies the clarity element in a wrongful termination claim. Under the circumstances in this case, we cannot say that the election law in R.C. Chapter 3501, the election directives, or the ethics policy cited by Logan required employee reporting, prohibited retaliation for reporting, or related to employee or public safety. As a result, even with the factual allegations in the pleadings construed in Logan's favor, we conclude

that the Champaign County Defendants were entitled to judgment as a matter of law.

{¶ 39} The trial court did not err in granting the Champaign County Defendants' motion for judgment on the pleadings with respect to Logan's wrongful termination in violation of public policy claim.   Logan's first assignment of error is overruled.


III.     The Trial Court Did Not Err in Granting Judgment on the Pleadings on the Declaratory Judgment Claim

{¶ 40} Logan's second assignment of error states:

The trial court erred in finding that Appellant did not state a claim for declaratory judgment.

{¶ 41} Logan contends that the trial court erred in finding that she did not state a claim for declaratory judgment.   According to Logan, her declaratory judgment claim was grounded in a real and substantive controversy between adverse parties; the controversy was justiciable in character; and speedy relief was necessary to preserve her rights. She asserts that her claims involved an ongoing harm with future implications. She further contends that her declaratory judgment action was distinguishable from her wrongful discharge claim. We disagree.

{¶ 42} Declaratory judgment actions are governed by R.C. Chapter 2721. R.C. 2721.02 refers to "rights, status, or other legal relations" as the subject of the court's declaratory powers. These rights do not extend to everyone who is practically affected by the controversy involved, but only to those persons who are legally affected. *Schriber Sheet Metal & Roofers, Inc. v. Shook*, 64 Ohio App. 276, 285 (2d. Dist. 1940); *Shoemaker*

*v. City of Piqua*, 2000 WL 1514085, *2 (2d Dist. Oct. 13, 2000), citing *Shook.* R.C. 2721.03 states, in part:

> any person interested under a deed, will, written contract, or other writing constituting a contract or any person whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule as defined in section 119.01 of the Revised Code, municipal ordinance, township resolution, contract, or franchise may have determined any question of construction or validity arising under the instrument, constitutional provision, statute, rule, ordinance, resolution, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it.

{¶ 43} Ohio courts have consistently held that, for declaratory relief to be considered an appropriate remedy, the plaintiff must establish the following three essential elements: (1) that a real controversy exists between the parties; (2) the controversy is justiciable in nature; and (3) the particular situation is one in which speedy relief is necessary to preserve the rights of the parties. *See Williams v. Akron*, 54 Ohio St. 2d 136, 144 (1978). When determining if a "real controversy" exists, Ohio courts have found that the controversy must be based upon legal rights and obligations. *Superior Dairy, Inc. v. Stark County Milk Producers' Assn.*, 89 Ohio App. 26, 31 (5th Dist. 1950).

{¶ 44} When an action or proceeding in which declaratory relief is sought involves the determination of an issue of fact, "that issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the action or proceeding is pending." R.C. 2721.10. However, courts may refuse to

render a declaratory judgment "if the judgment or decree would not terminate the uncertainty or controversy giving rise to the action or proceeding in which the declaratory relief is sought." R.C. 2721.07.

{¶ 45} We review a trial court's decision regarding justiciability of a declaratory judgment action for an abuse of discretion. *Arnott v. Arnott*, 2012-Ohio-3208, ¶ 13. "The term 'abuse of discretion' means an unreasonable, arbitrary, or unconscionable decision." *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 2002-Ohio-2219, ¶ 14, citing *State ex rel. Elsass v. Shelby Cty. Bd. of Commrs.*, 92 Ohio St.3d 529, 533 (2001).

{¶ 46} In her claim for declaratory judgment, Logan sought several declarations, many of which pertained to issues of fact. She claimed that there was a justiciable controversy as to whether she had been wrongfully terminated in violation of public policy. In granting the Champaign County Defendants' motion for judgment on the pleadings, the trial court explained that, though styled as a declaratory judgment action, the crux of Logan's claim was that she was wrongfully terminated after the Champaign County Defendants allegedly failed to follow the Secretary of State's election directives and then fired her after she reported those violations to the Secretary of State.

{¶ 47} The trial court pointed to the following declarations sought by Logan in her claim for declaratory judgment:

> That pursuant to Complaint Exhibit 3 [ethics policy], Plaintiff had duty to report the violations to the Ohio Secretary of State;
>
> That pursuant to Complaint Exhibit 3 [ethics policy], Plaintiff had a reasonable expectation of anonymity about her reports to the Ohio

Secretary of State;

That Plaintiff is entitled to reinstatement to her position with back pay and/or a public apology by the Defendants;

That Plaintiff is entitled to recover damages for her wrongful termination and public humiliation;

That Defendants, other than the Secretary of State have demonstrated malice and reprehensible behavior towards the Plaintiff;

That as a result of the conduct, reprehensible behavior and malice of the Defendants, other than the Secretary of State, these Defendants have demonstrated malice and forethought and reprehensible behavior towards the Plaintiff, that the Defendants other than the Ohio Secretary of State should be required to pay Plaintiff's attorney fees and in the case of the individuals that said payments be made from their personal funds[.]

Complaint, ¶ 91.4, 91.5, 91.21, 91.22, 91.23, 91.24. In citing these declaration requests, the trial court surmised that the same identified public policy concerns and remedies sought in Logan's declaratory judgment action also served as the basis for her wrongful termination claim, thereby rendering her declaratory judgment action and wrongful termination claims indistinguishable. We agree.

{¶ 48} For a court to proceed with a declaratory judgment action, there must be a real and justiciable controversy between the parties with adverse legal interests where speedy relief is necessary to preserve the rights of parties. Logan complained of actions of the Champaign County Defendants in 2022 related to her termination of employment,

and thus, she sought a declaratory judgment, reinstatement of her employment to her previous position, and back pay with benefits and attorney's fees. We agree with the trial court that, though her claim was styled as one for declaratory judgment, the core of her claim was that she had been wrongfully terminated.

{¶ 49} To state a claim for declaratory judgment, Logan was required to allege facts showing that a real justiciable controversy existed between the parties necessitating speedy relief to preserve her rights. As found by the trial court, Logan did not seek a determination as to the construction or validity of a constitutional provision, statute, rule, or policy directive pertaining to election procedures or a declaration of rights or status under such provisions. Instead, Logan sought a determination that the Champaign County Defendants had violated the Secretary of State's election directives and that they had wrongfully terminated her employment after she informed the Secretary of State of those violations—neither of which related to the rights, status, or other legal relations between the parties or a determination of a question of construction or validity arising under a constitutional provision, statute, or rule.

{¶ 50} Moreover, Logan did not allege an ongoing harm or potential for future harm, but rather, alleged past harm—e.g., the termination of her employment. As a result, Logan's complaint did not demonstrate that speedy relief was necessary to preserve her rights, as the actions about which she complained had occurred in 2022. and therefore the damage, if any, had already occurred. *See Bunting v. Watts*, 2018-Ohio-3357, ¶ 19 (5th Dist.), citing *Mansfield Plumbing Products LLC v. Estate of Sparks*, 2005-Ohio-3121, ¶ 17-18 (5th Dist.).

{¶ 51} Finally, we note that declaratory judgment is inappropriate when "a resolution of the controversy depends greatly upon a determination of the facts of the case, . . . especially when the same facts are at issue in a pending action." *Therapy Partners of Am., Inc. v. Health Providers, Inc.,* 129 Ohio App.3d 572, 578 (10th Dist. 1998), citing *Videtto v. Marsh*, 112 Ohio App. 151, 153 (3d Dist. 1960). Logan's claim for declaratory judgment and the declarations sought depended on a determination of the facts of the case, which were the same facts at issue in her wrongful termination claim. Thus, declaratory judgment was inappropriate. Likewise, as we already concluded, Logan did not satisfy the clarity element for her wrongful termination claim, and consequently, she cannot bring a declaratory judgment action against the Champaign County Defendants premised on the same factual allegations set forth in that claim. Accordingly, we cannot say that the trial court erred in granting judgment on the pleadings on Logan's declaratory judgment claim when a declaratory judgment would not have terminated the controversy giving rise to this action—namely that Logan was allegedly wrongfully terminated by the Champaign County Defendants.

{¶ 52} We conclude that, as a matter of law, Logan's complaint did not set forth the necessary elements for a declaratory judgment claim. Accordingly, Logan's second assignment of error is overruled.

## I.      Conclusion

{¶ 53} Having overruled both of Logan's assignments of error, we will affirm the judgment of the trial court.

. . . . . . . . . . . .

WELBAUM, J. and TUCKER, J., concur.