[Cite as *Joy v. MetroHealth Sys.*, 2026-Ohio-1557.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| MATTHEW JOY, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 115437 |
| v. | : | |
| THE METROHEALTH SYSTEM, | : | |
| Defendant-Appellee. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 30, 2026

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-25-115532

*Appearances:*

Walter | Haverfield, LLP, John E. Schiller, and Alexandra
V. Dattilo, *for appellant.*

Zashin & Rich Co., L.P.A., Stephen S. Zashin, and Lauren
M. Drabic, *for appellee.*

EMANUELLA D. GROVES, P.J.:

{¶ 1} Plaintiff-appellant Matthew Joy ("Dr. Joy") appeals the trial court's granting of defendant-appellee The MetroHealth System dba MetroHealth Medical Center's ("MetroHealth") motion for judgment on the pleadings and dismissing his complaint with prejudice. Upon review, we affirm the trial court's decision.

## I. Facts and Procedural History

{¶ 2} In April 2025, Dr. Joy — an anesthesiologist who formerly worked for MetroHealth for over 23 years — filed a complaint against MetroHealth asserting two causes of action: (1) breach of contract and (2) wrongful termination in violation of public policy.[1] Therein, Dr. Joy asserted that his employment was renewed every two years since his initial hiring in 1999, the latest being in March 2022. According to Dr. Joy, his employment was wrongfully terminated in June 2023 "in retaliation for his persistent dedication to patient safety and his refusal to look the other way when MetroHealth staff failed to properly follow protocol and important patient safety guidelines." Dr. Joy claimed that he made written and oral complaints to appropriate medical staff, but MetroHealth justified his immediate termination by falsely claiming that he lacked professionalism and failed to perform his duties in accordance with its value system.

{¶ 3} Dr. Joy asserted that MetroHealth's employee handbook and system policy titled "EC-04 — Reporting Concerns" ("Reporting Policy") prohibited

---

[1] In his appellate briefs, Dr. Joy argues — for the first time — that the facts pled in his two-count complaint are sufficient to support a third claim or legal theory: promissory estoppel. As noted by MetroHealth, this argument was not introduced at the trial-court level and, therefore, was not preserved for appellate review. A party cannot raise new claims or arguments for the first time on appeal, and a failure to present an issue before the trial court results in a waiver of that issue for appellate purposes. *Garrett v. Cuyahoga Cty.*, 2022-Ohio-2770, ¶ 27 (8th Dist.), citing *Lycan v. Cleveland*, 2019-Ohio-3510, ¶ 32-33 (8th Dist.) ("It is well-established that arguments raised for the first time on appeal are generally barred and a reviewing court will not consider issues that the appellant failed to raise in the trial court."), and *Cleveland Town Ctr., L.L.C. v. Fin. Exchange Co. of Ohio, Inc.,* 2017-Ohio-384, ¶ 21 (8th Dist.). Therefore, we limit our review to the two claims contemplated at the trial-court level: breach of contract and wrongful termination in violation of public policy.

retaliation against employees for raising patient safety concerns or reporting suspected wrongdoing in good faith. Dr. Joy alleged that MetroHealth did not enforce its value system uniformly, consistently, or predictably and his immediate dismissal was unreasonable, unjustified, and in violation of MetroHealth's disciplinary procedures. Dr. Joy further alleged that MetroHealth's policies against retaliation constitute a clear and important expression of public policy since it is a governmental entity.

{¶ 4} Based on these facts, Dr. Joy claimed that MetroHealth breached his employment contract — created by his March 2022 renewal and MetroHealth's handbook, Reporting Policy, and other relevant policies and procedures — "by terminating [him] improperly in retaliation for reporting issues of patient safety and violations of policies and procedures, and federal regulations, that required MetroHealth employees to follow his instructions in furnishing anesthesia services." Dr. Joy also claimed that his wrongful termination was motivated by his reporting of patient concerns "stemming from MetroHealth employees' failure to follow his instructions in furnishing anesthesia services" despite the existence of (1) "[a] clear public policy against retaliation for reporting patient safety concerns . . . manifested in Ohio law," (2) "its own policies against retaliation," and (3) "a clear public policy for the orderly and supervised furnishing of anesthesia . . . under state and federal law."

{¶ 5} Dr. Joy attached a copy of the two-page Reporting Policy to the complaint. The Reporting Policy applied to "Workforce Members," which included

"employees, providers, volunteers, trainees, and other persons whose conduct, in the performance of work for [MetroHealth], [was] under direct control of such entity, whether or not they [were] paid by [MetroHealth]." The Reporting Policy "outline[d] the expectations and procedures for Workforce Members to timely report potential violations of [MetroHealth's] Code of Conduct, policies, procedures, laws or regulations applicable to [MetroHealth]." Finally, the Reporting Policy established that MetroHealth maintained an "open-door policy"; encouraged Workforce Members, patients, visitors, vendors, and community members to report concerns; and "prohibit[ed] retaliation against Workforce Members who report suspected wrongdoing in good faith."

{¶ 6} In response, MetroHealth filed an answer and asserted several affirmative defenses. In its answer, MetroHealth denied the existence of an employment contract, countering that Dr. Joy was an at-will employee who "was last approved for reappointment based on continuation of clinical privileges" via a letter dated March 15, 2022 ("Reappointment Letter"). MetroHealth also denied Dr. Joy's characterization of MetroHealth's policies, asserting that it had "numerous unilaterally-issued system-wide employment policies, including [the Reporting Policy], that [were] made available to employees and posted on MetroHealth's intranet." Finally, MetroHealth denied that Dr. Joy was wrongfully terminated for reporting patient safety concerns. MetroHealth attached a copy of the Reappointment Letter, which stated in relevant part: "This reappointment is effective 02/01/2022 with clinical privileges continuing until your next scheduled

reappointment date of 01/30/2024 unless circumstances warrant consideration of status change or employment change prior to the expiration date." The Reappointment did not contain any terms of employment beyond the general requirement that medical staff comply with MetroHealth's policies, provisions, and emergency plans.

{¶ 7} Along with its answer, MetroHealth filed a motion for judgment on the pleadings. MetroHealth argued that it was entitled to judgment as a matter of law since (1) no contract existed between MetroHealth and Dr. Joy — an at-will employee — and (2) the complaint failed to identify the existence of a clear public policy in connection with Dr. Joy's wrongful-termination claim. First, MetroHealth argued that Dr. Joy failed to assert that the parties entered into a contractual agreement. MetroHealth claimed that the Reappointment Letter's language "did not guarantee [Dr. Joy's] continued employment with MetroHealth" or "demonstrate[d] an intent to create an agreement" with him; rather, "it simply granted a continuation of [Dr. Joy's] clinical privileges while making clear that MetroHealth could reconsider his employment status at any time." (Emphasis omitted.) MetroHealth further asserted that its unilaterally issued Reporting Policy "simply outline[d] the expectations and procedures for MetroHealth employees to report violations" and did "not contain any language expressly or implicitly guaranteeing MetroHealth employees continued employment." MetroHealth argued that there was no mutual assent to the terms of the Reporting Policy and

nothing in it altered the at-will nature of Dr. Joy's employment or created an employment contract between Dr. Joy and MetroHealth.

{¶ 8} Second, MetroHealth argued that Dr. Joy's wrongful-termination-in-violation-of-public-policy claim failed as a matter of law since he did not sufficiently plead the cause of action's "clarity element." MetroHealth asserted that Dr. Joy was required to articulate, with specificity, the existence of a clear public policy and its manifestation in a state or federal constitution, statute, administrative regulation, or in common law. MetroHealth claimed that Dr. Joy's "reliance on an internal system policy and vague references to state and federal law fall far short of satisfying the clarity element." According to MetroHealth, the Reporting Policy could not be used as a basis for Dr. Joy's claim since "it [did] not even apply county-wide, much less statewide," and Dr. Joy failed to cite any source for his contention that a public policy existed related to the orderly and supervised furnishing of anesthesia.

{¶ 9} Dr. Joy opposed the motion, countering that he properly pled his claims and dismissal was inappropriate at this stage of the proceedings since the complaint's allegations must be accepted as true and reasonable inferences must be construed in his favor. Dr. Joy reiterated his allegation that his March 2022 reappointment, MetroHealth's handbook, the Reporting Policy, and "potentially other relevant policies and procedures" created a contract of employment between him and MetroHealth. According to Dr. Joy, the Reporting Policy formed "part of his employment contract with MetroHealth" since it created "a specific condition of employment that MetroHealth employees [would] not be retaliated against for good

faith reports of suspected wrongdoing." Dr. Joy further argued that his allegations related to the wrongful-termination-in-violation-of-public-policy claim satisfied Civ.R. 8(A)'s pleading requirements. Dr. Joy also referenced — for the first time — two specific examples of the alleged "clear public policies related to the supervised furnishing of anesthesia under Ohio law, i.e., public policies related to patient safety."

{¶ 10} In response, MetroHealth filed a reply in support of its motion, arguing that — even after accepting the complaint's allegations as true — Dr. Joy could prove no set of facts entitling him to relief. MetroHealth reiterated that a contract did not exist between the parties and asserted that Dr. Joy "effectively concedes as much [by] disingenuously attempting to repackage a MetroHealth employment policy into an employment agreement, despite no intent whatsoever — express or implied — by either party to create such an agreement." MetroHealth further reiterated that Dr. Joy's complaint "assert[ed] in a conclusory fashion" that clear public policies existed but failed to cite any specific source for that conclusion. According to MetroHealth, the clarity element of Dr. Joy's wrongful-termination-in-violation-of-public-policy claim could not be satisfied by vague references to its policies or "general purported policies." MetroHealth also argued that the two examples Dr. Joy cited in his brief in opposition — which failed to satisfy the clarity element in any event — should not be considered since they were not pleaded in the complaint. MetroHealth emphasized that the trial court should not accept Dr. Joy's legal conclusions as true absent any legal basis to support them. Accordingly,

MetroHealth requested that the complaint be dismissed in its entirety since Dr. Joy could not establish his claims as a matter of law.

{¶ 11} Ultimately, the trial court granted MetroHealth's motion for judgment on the pleadings and dismissed Dr. Joy's complaint for breach of contract and wrongful termination in violation of public policy. Dr. Joy appealed the trial court's ruling, raising a single assignment of error for review.

**Assignment of Error**

The trial court erred in dismissing [Dr. Joy's] complaint with prejudice at the pleading stage. [Dr. Joy's] complaint alleged specific facts supporting his claim that he was terminated from his employment as a physician in retaliation for raising bona fide patient safety concerns in violation of [MetroHealth's] policies and public policy.

## II. Law and Analysis

{¶ 12} In his sole assignment of error, Dr. Joy argues that the trial court erred in granting MetroHealth's motion for judgment on the pleadings since the "complaint alleged facts that, when assumed as true, supported a cognizable claim for retaliatory termination in violation of [MetroHealth's] policies and . . . public policy."

{¶ 13} A motion for judgment on the pleadings only presents questions of law and tests "the legal sufficiency of the claims asserted." *Crenshaw v. Howard*, 2022-Ohio-3914, ¶ 13 (8th Dist.), citing *Edwards v. Kelley*, 2021-Ohio-2933, ¶ 7 (8th Dist.). Therefore, we apply the de novo standard of review on appeal and conduct an independent examination without affording deference to the trial court's decision. *Rowe v. Hoist & Crane Serv. Group*, 2022-Ohio-3130, ¶ 20 (8th Dist.),

citing *New Riegel Local School Dist. Bd. of Edn. v. Buehrer Group Architecture & Eng., Inc.*, 2019-Ohio-2851, ¶ 8, citing *Rayess v. Edn. Comm. for Foreign Med. Graduates*, 2012-Ohio-5676, ¶ 18.

{¶ 14} Motions for judgment on the pleadings are governed by Civ.R. 12(C), which provides: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." In ruling on a Civ.R. 12(C) motion, the court is restricted to the allegations in the pleadings and any writings attached as exhibits to the pleadings. *Schmitt v. Educational Serv. Ctr.*, 2012-Ohio-2210, ¶ 9 (8th Dist.); *Edwards v. Kelley*, 2021-Ohio-2933, ¶ 7-9 (8th Dist.) (noting that "written instrument" attached to a pleading — a term that "has primarily been interpreted to include documents that evidence the parties' rights and obligations" — qualifies as part of that pleading).

{¶ 15} "'A motion for judgment on the pleadings does not allow a court to weigh the evidence; instead, it simply tests the sufficiency of the complaint.'" *Koz v. Newburgh Hts.*, 2025-Ohio-1555, ¶ 5 (8th Dist.), quoting *State ex rel. Ware v. Booth*, 2024-Ohio-2102, ¶ 5. When reviewing a complaint's sufficiency, courts must be mindful that Civ.R. 8(A) — which governs the general rules of pleadings — requires only "(1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." Nevertheless, "[e]ven under Ohio's liberal pleading rules and notice-pleading standard . . . a cause of action must be factually supported and courts need not accept bare assertions of legal conclusions." *Francis v. Northeast*

*Ohio Neighborhood Health Servs.*, 2021-Ohio-3928, ¶ 12 (8th Dist.), citing *Tuleta v. Med. Mut. of Ohio*, 2014-Ohio-396, ¶ 28 (8th Dist.).

{¶ 16} Indeed, it is well-established that "'[a] well-pled complaint must include factual allegations going to each element of the claim'" and those factual allegations must be accepted as true when reviewing a Civ.R 12(C) motion. *Mundy v. Golightly*, 2022-Ohio-83, ¶ 8 (8th Dist.), quoting *Torrance v. Rom*, 2020-Ohio-3971, ¶ 56 (8th Dist.); *Rowe* at ¶ 21, citing *Pincus v. Dubyak*, 2021-Ohio-3034, ¶ 17 (8th Dist.). However, "'conclusory statements without any factual allegations in support are insufficient'" and unsupported conclusions cannot defend against a motion for judgment on the pleadings. *Mundy* at *id.*, quoting *Torrance* at *id.*; *Rowe* at *id.*, citing *Pincus* at *id.* Thus, judgment on the pleadings is appropriate where, after considering the material allegations of the pleadings and all reasonable inferences to be drawn therefrom in a light most favorable to the nonmoving party, the court finds that no material factual issues exist, and the moving party is entitled to judgment as a matter of law. *Rayess* at ¶ 18, citing *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996).

{¶ 17} With these concepts in mind, we consider whether the trial court erred in granting MetroHealth's Civ.R. 12(C) motion and dismissing Dr. Joy's complaint for breach of contract and wrongful termination in violation of public policy.

## A. Breach-of-Contract Claim

{¶ 18} "To succeed on a breach-of-contract claim, a plaintiff must demonstrate 'the existence of a binding contract or agreement; the non-breaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the non-breaching party suffered damages as a result of the breach.'" *Jordan v. Giant Eagle Supermarket*, 2020-Ohio-5622, ¶ 45 (8th Dist.), quoting *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 108 (8th Dist. 1995). A binding contract exists only where the following elements are present: "'offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.'" *Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F. Supp. 409, 414 (N.D.Ohio 1976). Moreover, a contract is unenforceable where there is no "meeting of the minds as to the essential terms." *Id.*, citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St. 3d 366, 369 (1991).

{¶ 19} In the instant case, the parties dispute whether an employment contract exists between Dr. Joy and MetroHealth. In his complaint, Dr. Joy alleged that the MetroHealth's renewal of his employment in March 2022, handbook, Reporting Policy, and other relevant policies and procedures created a contract of employment between him and MetroHealth. Dr. Joy attached the Reporting Policy to his complaint to support this conclusion. On appeal, Dr. Joy claims that the Reporting Policy carved out exceptions to his at-will employment since it created a

duty to report concerns and prohibited MetroHealth from retaliating against employees who reported.

{¶ 20} In its answer, MetroHealth countered that Dr. Joy was an at-will employee and an employment contract did not exist. MetroHealth attached the Reappointment Letter to its answer. On appeal, MetroHealth argues that and the documents referenced by Dr. Joy do not give rise to an employment contract. Rather, MetroHealth claims that (1) the Reappointment Letter made clear that Dr. Joy's continued reappointment could be terminated at any time and (2) neither the Reporting Policy nor any other MetroHealth policy altered the at-will nature of Dr. Joy's employment.

{¶ 21} "Ohio adheres to the concept of at-will employment, meaning that in the absence of a contract, employment is terminable at-will by either the employer or the employee, at any time, and for any reason not contrary to law." *Galgoczy v. Chagrin Falls Auto Parts*, 2010-Ohio-4684, ¶ 4 (8th Dist.). However, the at-will-employment doctrine is subject to certain exceptions, including: "(1) the existence of an implied or express contract which alters the terms of discharge; (2) the existence of promissory estoppel where representations or promises were made to an employee; and (3) wrongful discharge in violation of public policy." *Brunaugh v. Anomatic Corp.,* 2025-Ohio-4833, ¶ 15 (5th Dist.). Nevertheless, the party seeking to prove the existence of a contract "has a heavy burden" since at-will employment is presumed and "all of the elements of a contract must be established,

including a 'meeting of the minds' to show that employment was intended to be other than at-will." *Galgoczy* at ¶ 4.

{¶ 22} Generally, employee handbooks, manuals, and policies will not affect at-will employment, do not constitute an employment contract, and are insufficient, by themselves, to create a contractual obligation upon an employer. *Strasser v. Fortney & Weygandt*, 2001 Ohio App. LEXIS 5738, *6 (8th Dist. Dec. 20, 2001); *Evans v. Med. Mut. of Ohio*, 2001 Ohio App. LEXIS 1148, *10 (8th Dist. Mar. 15, 2001); *Brunaugh* at ¶ 15. To alter the nature of at-will employment, both parties must have intended for the language in the handbooks, manuals, or policies to be legally binding. *Clayton v. Cleveland Clinic Found.*, 2015-Ohio-1547, ¶ 11 (8th Dist.). "In other words, the employee's belief that the handbook affords him contractual rights does not mean that it does unless the employer intends it to do so." *Fennessey v. Mt. Carmel Health Sys.*, 2009-Ohio-3750, ¶ 18 (10th Dist.). Thus, "'[a]bsent mutual assent * * * a handbook becomes merely a unilateral statement of rules and policies which create no obligation[s] and rights.'" *Clayton* at ¶ 11, quoting *Tohline v. Cent. Trust Co., N.A.*, 48 Ohio App.3d 280, 282 (1st Dist. 1988); *Ney v. May Eng. Co. LLC*, 2025-Ohio-5081, ¶ 66 (7th Dist.) ("Without a manifestation of mutual assent to be bound by the handbook or policy, the writing is a unilateral statement of rules and policies.").

{¶ 23} Nothing in the Reporting Policy or Reappointment Letter supports the conclusion that an employment contract existed between Dr. Joy and MetroHealth. The Reporting Policy does not constitute a specific promise of

employment that would modify Dr. Joy's at-will employment relationship. The two-page policy applies to all "employees, providers, volunteers, trainees, and other persons whose conduct, in the performance of work for [MetroHealth], are under direct control of such entity, whether or not they are paid by [MetroHealth]" and even encourages patients, visitors, vendors, and community members to report concerns. The Reporting Policy does not contain any statement that MetroHealth intends to be bound by a specific termination procedure or that any employee has job security. It merely states that retaliation is prohibited "against Workforce Members who report suspected wrongdoing in good faith." Neither the Reporting Policy's language nor the complaint's factual allegations — as distinguished from complaint's conclusory statement that MetroHealth's handbook, Reporting Policy, and other relevant policies and procedures created an employment contract — indicate that the Reporting Policy represents anything more than a unilateral statement of rules and policies.

{¶ 24} Despite the complaint's allegations, our review of the Reappointment Letter further reveals that an employment contract was not created between Dr. Joy and MetroHealth. The Renewal Letter simply approved Dr. Joy's reappointment and granted a continuation of his clinical privileges. Beyond broadly stating that medical staff are required to comply with MetroHealth's policies, provisions, and emergency plans, the Renewal Letter does not contemplate any terms of Dr. Joy's employment or contain several of the essential elements of contract formation.

Accordingly, we cannot say that the trial court erred in granting MetroHealth's Civ.R. 12(C) motion and dismissing Dr. Joy's breach-of-contract claim.

**B. Wrongful-Termination-in-Violation-of-Public-Policy Claim**

{¶ 25} In his single assignment of error, Dr. Joy also challenges the trial court's dismissal of his wrongful-termination-in-violation-of-public-policy claim.

{¶ 26} As mentioned above, the tort of wrongful termination in violation of public policy is an exception to the at-will-employment doctrine. *House v. Iacovelli*, 2020-Ohio-435, ¶ 11, citing *Greeley v. Miami Valley Maintenance Contrs.*, 49 Ohio St.3d 228 (1990). Such a claim is specifically limited to at-will employees and cannot be brought by a contract employee. *Sullivan v. Walsh Jesuit High School*, 2024-Ohio-2437, ¶ 14 (9th Dist.), citing *Haynes v. Zoological Soc. of Cincinnati*, 73 Ohio St.3d 254, 258 (1995). A plaintiff must establish four elements to prove a wrongful-termination-in-violation-of-public-policy claim:

> (1) that a clear public policy existed and was manifested either in a state or federal constitution, statute or administrative regulation or in the common law ("the clarity element"), (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy ("the jeopardy element"), (3) that the plaintiff's dismissal was motivated by conduct related to the public policy ("the causation element"), and (4) that the employer lacked an overriding legitimate business justification for the dismissal ("the overriding-justification element").

*Iacovelli* at ¶ 12, quoting *Miracle v. Ohio Dept. of Veterans Servs.*, 2019-Ohio-3308, ¶ 12. While the causation and overriding-justification elements are questions to be determined by the finder of fact, the clarity and jeopardy elements are questions of

law to be determined by the court. *Id.*, citing *Collins v. Rizkana*, 73 Ohio St.3d 65, 70 (1995).

{¶ 27} On appeal, Dr. Joy argues that he sufficiently pled facts satisfying the clarity element for his wrongful-termination-in-violation-of-public-policy claim.[2] Dr. Joy asserts that a clear public policy can be discerned from several sources and identifies various administrative, state, and federal codes and regulations — many of which are mentioned for the first time on appeal.

{¶ 28} "'[T]o satisfy the clarity element of a claim of wrongful discharge in violation of public policy, a terminated employee must articulate a clear public policy by citation to specific provisions in the federal or state constitution, federal or state statutes, administrative rules and regulations, or common law.'" *Rowe v. Hoist & Crane Serv. Group*, 2022-Ohio-3130, ¶ 24 (8th Dist.), citing *Dohme v. Eurand Am., Inc.*, 2011-Ohio-4609, ¶ 23-24 ("Unless the plaintiff asserts a public policy and identifies federal or state constitutional provisions, statutes, regulations, or common law that support the policy, a court may not presume to sua sponte identify the source of that policy."). Thus, "'an employee cannot simply allege that clear public policy exists because of a general societal interest, but rather must set forth specific law.'" *Logan v. Champaign Cty. Bd. of Elections*, 2025-Ohio-297, ¶ 31 (2d Dist.), quoting *Creveling v. Lakepark Indus. Inc.*, 2021-Ohio-764, ¶ 52 (6th Dist.).

---

[2] Dr. Joy also claims that he pled sufficient facts to satisfy the jeopardy element of his claim for wrongful termination in violation of public policy. However, the parties did not raise any issues or present any arguments regarding the jeopardy element before the trial court. Therefore, we limit our review to the single element contemplated at the trial-court level: the clarity element.

{¶ 29} Our review of the complaint reveals that Dr. Joy claims that his wrongful termination was motivated by his reporting of patient concerns "stemming from MetroHealth employees' failure to follow his instructions in furnishing anesthesia services." However, Dr. Joy did not cite any specific statement of law in support of his public-policy claim. Rather, Dr. Joy generally alleges that "[a] clear public policy against retaliation for reporting patient safety concerns exists and is manifested in Ohio law" and in MetroHealth's "own policies against retaliation." Moreover, Dr. Joy broadly claims that "a clear public policy for the orderly and supervised furnishing of anesthesia exists under state and federal law." Dr. Joy was obligated to articulate specific sources of law — drawn from the state or federal constitution, statutes, administrative regulations, or the common law — that support the clear public policy upon which his claim relies. Since Dr. Joy failed to do so, he did not sufficiently plead the clarity element, an essential element to his claim's survival. *Logan* at ¶ 37 (affirming the granting of a motion for judgment on the pleadings where the plaintiff did not cite specific statements of law from federal or state constitutions and statutes, administrative rules and regulations, or common law in support of her wrongful-termination-in-violation-of-public-policy claim), citing *Dohme*. Consequently, the trial court did not err in granting MetroHealth's motion for judgment on the pleadings and dismissing Dr. Joy's claim for wrongful termination in violation of public policy.

{¶ 30} Thus, after considering the material allegations of the pleadings and all reasonable inferences to be drawn therefrom in a light most favorable to Dr. Joy,

the trial court properly concluded that material factual issues did not exist and found that MetroHealth was entitled to judgment as a matter of law under Civ.R. 12(C). Accordingly, Dr. Joy's single assignment of error is overruled.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
TIMOTHY W. CLARY, J., CONCUR